UNITED STATES of America, Appellee,

v.

**Abel A. MARIANO, Jr., Defendant, Appellant.**

UNITED STATES of America, Appellee,

v.

**Barry BUTTERWORTH, Defendant, Appellant.**

**Nos. 92–1491, 92–1630.**

United States Court of Appeals, First Circuit.

Heard Dec. 11, 1992.

Decided Feb. 2, 1993.

---

Richard J. Shea, with whom Edward C. Roy was on brief, for defendant, appellant Abel A. Mariano, Jr.

Richard A. Gonnella for defendant, appellant Barry Butterworth.

Edwin J. Gale, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Margaret E. Curran, Asst. U.S. Atty., were on brief, for appellee.

Before SELYA, Circuit Judge,
BOWNES, Senior Circuit Judge, and
STAHL, Circuit Judge.

SELYA, Circuit Judge.

These consolidated appeals challenge determinations made by the district court under the federal sentencing guidelines. Concluding, as we do, that the court misconstrued its authority to depart from a predetermined sentencing range in consequence of a defendant's substantial assistance, U.S.S.G. § 5K1.1 (Nov.1991), we remand for resentencing.

## I. BACKGROUND

The instant appeals find their genesis in the polluted political purlieus of Pawtucket, Rhode Island. *See, e.g., United States v. Sarault,* 975 F.2d 17 (1st Cir.1992) (affirming racketeering sentence with respect to Pawtucket's mayor). The appellants, Abel A. Mariano, Jr. and Barry Butterworth, secured lucrative municipal contracts and, in the course of performing the jobs, lubricated the wheels of city government by paying under-the-table cash stipends to insistent municipal officials. Mariano made periodic payments (perhaps totalling as much as $50,000) to forestall the reassignment of sewer-line repair work to another contractor. Butterworth decided to play ball as part of his effort to retain generous contracts for the renovation of McCoy Stadium. In all, Butterworth made a series of payments to the ringleaders in an aggregate amount exceeding $100,000.

Appellants' payments took place over a substantial span of time. It was only after the authorities started to uncover pervasive corruption in the Sarault administration that appellants began cooperating with the U.S. Attorney. In the aftermath of this cooperative effort, the government, rather than seeking indictments, prepared infor-

mations charging the two men with violating 18 U.S.C. § 666(a)(2) (1988).[1] The defendants pled guilty pursuant to plea agreements providing in relevant part that the government would pursue a reduction in the offense level based on the defendants' assistance to law enforcement agencies.

Mariano and Butterworth were charged and sentenced separately. In each instance, the prosecution described the defendant's cooperation and argued for a six-level downward departure pursuant to U.S.S.G. § 5K1.1. The district court refused to depart and sentenced each defendant to a twenty-seven month prison term—an incarcerative sentence at the top end of the guideline sentencing range (GSR). The government moved for reconsideration. In explaining his refusal to reconsider, the district judge, referring to and quoting from *United States v. Aguilar-Pena*, 887 F.2d 347 (1st Cir.1989), stated that he did not have discretion to depart.

In these appeals,[2] appellants claim in unison that the district court erred in establishing the base offense level (and, hence, in fixing the GSR), that the court misapprehended the legal standard governing departures under section 5K1.1, and that their sentences were "plainly unreasonable" in derogation of 18 U.S.C. § 3742(a)(4) (1988). In addition, Mariano contends that the district court labored under fundamental factual misconceptions and violated the Due Process Clause by focusing exclusively on deterrence concerns to the detriment of an individualized sentence. Not to be outdone, Butterworth contends that the government breached the plea agreement by failing to argue enthusiastically enough in support of a downward departure.

We concentrate initially on appellants' flagship claim—the assertion that the court below misapprehended the controlling legal standard, thus mismeasuring the limits of the discretion entrusted to it under section 5K1.1. We take this tack because, if this claim pans out, most of appellants' other asseverations need not be considered.

## II. THE COURT'S AUTHORITY TO DEPART

We begin our discussion of the court's authority to depart by pondering a jurisdictional quandary. That quandary resolved, we then address the merits of appellants' claim.

### A. *Appellate Jurisdiction.*

■ Ordinarily, an appeal will not lie from a district court's refusal to depart from a properly calculated sentencing range. *See United States v. Tardiff*, 969 F.2d 1283, 1290 (1st Cir.1992); *United States v. Romolo*, 937 F.2d 20, 22 (1st Cir.1991) (collecting cases). However, appellate jurisdiction may attach when it appears that the failure to depart stemmed from the sentencing court's mistaken impression that it lacked the legal authority to depart or, relatedly, from the court's misapprehension of the rules governing departure. *See United States v. Amparo*, 961 F.2d 288, 292 (1st Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *United States v. Lauzon*, 938 F.2d 326, 330 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 450, 116 L.Ed.2d 468 (1991); *Romolo*, 937 F.2d at 22. Although this paradigm is dictated by the Sentencing Reform Act, *see Romolo*, 937 F.2d at 23 (discussing operation of 18 U.S.C. § 3742(a)), it also works well from a practical standpoint: in respect to declinations to depart, the limited appellate review that is available serves to correct errors

---

1. The statute of conviction criminalizes "corruptly giv[ing] ... anything of value to any person, with intent to influence or reward an agent of ... local ... government, or any agency thereof, in connection with any business, transaction, or series of transactions ... involving [$5000 or more]," so long as the governmental unit in question receives substantial federal subsidies. 18 U.S.C. § 666(a)(2).

2. Although the plea agreements contain provisions by virtue of which the defendants ostensibly waived their rights of appeal, the government has conceded that, in the circumstances of these cases, the waiver provisions are impuissant. We accept this concession uncritically. Hence, we take no view of either the enforceability *vel non* of such waivers or the safeguards which must be employed in respect thereto.

which are essentially "legal" in nature, but does not brook interference with a sentencing court's exercise of factfinding functions or discretion. *See Amparo,* 961 F.2d at 292; *see also Romolo,* 937 F.2d at 23.

■ These appeals fit snugly within the contours of the exception permitting appellate review. The gravamen of appellants' complaint is their colorable claim [3] that the district court confused the legal standard governing departures under U.S.S.G. § 5K1.1 with the legal standard governing departures under a markedly different guideline, U.S.S.G. § 5K2.0. This claim presents a question of law, not of fact, comfortably within our assigned purview. We hold, therefore, that we have jurisdiction over these appeals.

## B. *The Distinction Between Departure Modalities.*

We turn next to the merits of the claim. Because the assignment of error involves the parameters of a district judge's departure authority, we afford plenary review. *See Lauzon,* 938 F.2d at 330; *cf. United States v. Diaz-Villafane,* 874 F.2d 43, 49 (1st Cir.) (holding that *de novo* review is warranted when the court of appeals is called upon to determine "whether or not circumstances are of a kind or degree that may appropriately be relied upon to justify departure" under section 5K2.0), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

■ The district judge explicitly interpreted our decision in *United States v.*

*Aguilar–Pena,* 887 F.2d 347 (1st Cir.1989), as restricting his ability to depart downward in these cases. *Aguilar–Pena,* however, involved a district court's decision to depart under section 5K2.0.[4] *See id.* at 349–53. Under section 5K2.0, a district court is empowered to depart from the GSR if there "exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). Noting that "the birth of the Sentencing Commission was to some extent reflective of Congress's ardent desire to dispense with inequalities based on localized sentencing responses," *Aguilar–Pena,* 887 F.2d at 352, we held that the district court's authority to depart under section 5K2.0 was restricted to those few instances where there is "something 'special' about a given offender, or the accoutrements of the crime committed, which distinguishes the case from the mine-run for that offense." *Id.* at 350. In other words, *Aguilar–Pena* reflected this court's staunch belief that section 5K2.0 operates as a safety valve to be employed at the discretion of the district judge on those infrequent occasions when some important, atypical factor, not duly considered by the Sentencing Commission, removes a particular case from "the heartland for a given offense." *Id.* at 351.

■ U.S.S.G. § 5K1.1 is a different provision with a different *raison d'etre.* Congress specifically directed the Sentencing Commission to

---

3. In what it terms "the rarest of all cases," the government, which has a duty to see that justice is done, *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), argues that the defendants' assignment of legal error is on the mark. While such unanimity of purpose might raise jurisdictional concerns in a civil case, *see Muskrat v. United States,* 219 U.S. 346, 361, 31 S.Ct. 250, 255, 55 L.Ed. 246 (1911) (explaining adversity requirement); *see also Moore v. Charlotte–Mecklenburg Bd. of Educ.,* 402 U.S. 47, 48, 91 S.Ct. 1292, 1293, 28 L.Ed.2d 590 (1971) (per curiam) (finding no case or controversy where "both litigants desire precisely the same result"), criminal cases are a breed apart. When the government confesses error in a criminal proceeding, appellate courts routinely continue to exercise previously acquired jurisdic-

tion. *See, e.g., Mariscal v. United States,* 449 U.S. 405, 101 S.Ct. 909, 66 L.Ed.2d 616 (1981) (per curiam); *Young v. United States,* 315 U.S. 257, 258–59, 62 S.Ct. 510, 511–12, 86 L.Ed. 832 (1942); *see also United States v. Udo,* 963 F.2d 1318, 1319 (9th Cir.1992) (reviewing a failure to depart pursuant to § 5K1.1 in circumstances analogous to those presented in this case).

4. *Aguilar–Pena* flowed naturally from, and relied upon, our opinion in *United States v. Diaz–Villafane. See, e.g., Aguilar–Pena,* 887 F.2d at 349–50 (citing and quoting *Diaz–Villafane,* 874 F.2d at 49–52). Like *Aguilar–Pena, Diaz–Villafane* involved a departure under U.S.S.G. § 5K2.0.

assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed ... to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

28 U.S.C. § 994(n) (1988). Section 5K1.1 sprouted from this statutory seed. It provides, *inter alia*, that:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

U.S.S.G. § 5K1.1. This guideline serves a dual purpose. In addition to permitting *ex post* tailoring of defendants' sentences to reflect meaningful assistance rendered between the dates of apprehension and sentencing, it provides defendants, *ex ante*, with an incentive to cooperate in the administration of justice. *See, e.g., United States v. Damer*, 910 F.2d 1239, 1241 (5th Cir.) (per curiam), *cert. denied*, 498 U.S. 991, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990).

■ The methodological contrast between the two departure modalities is glaring. Because section 5K2.0 in a sense operates to promote disparity, the Sentencing Commission strove to *minimize* the number of times it would be invoked. But, because section 5K1.1 operates in part as an incentive, promoting cooperation with law enforcement agencies, the Sentencing Commission strove to *maximize* the number of times it would be invoked.[5] These divergent purposes, coupled with the significant linguistic differences between the two guidelines, clearly indicate that the legal standard for departures under section 5K2.0 cannot be transplanted into the substantial assistance sphere. The district court, therefore, erred in its stated reliance on *Aguilar–Pena*.

## C. *The Standard for Substantial Assistance Departures.*

In order to determine whether the court's error was harmless, we must explore the dimensions of the legal standard that the district court should have used. We have not yet had occasion to discuss the way in which departure decisions ought to be made under U.S.S.G. § 5K1.1. We do so today.

■ 1. *Discretion.* We begin with bedrock. Notwithstanding that a government motion is a *sine qua non* to a departure for a defendant's substantial assistance, *see Wade v. United States*, — U.S. —, —, 112 S.Ct. 1840, 1843, 118 L.Ed.2d 524 (1992), the decision whether to depart after the government has made such a motion, like the related decision as to the extent of any resultant departure, falls squarely within the district court's domain. The district court is not obligated to depart downward simply because a grateful prosecutor prefers a lighter sentence. *See United States v. Spiropoulos*, 976 F.2d 155, 162 (3d Cir.1992); *United States v. Ah–Kai*, 951 F.2d 490, 494 (2d Cir.1991); *United States v. Munoz*, 946 F.2d 729, 730 (10th Cir.1991); *United States v. Carnes*, 945 F.2d 1013, 1014 (8th Cir.1991); *United States v. Richardson*, 939 F.2d 135, 139 (4th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 599, 116 L.Ed.2d 623 (1991), — U.S. —, 112 S.Ct. 942, 117 L.Ed.2d 112 (1992); *United States v. Keene*, 933 F.2d 711, 715 (9th Cir.1991); *Damer*, 910 F.2d at 1241; *United States v. Pippin*, 903 F.2d 1478, 1485 (11th Cir.1990). Put bluntly, while a government motion is a necessary precondition to a downward departure based on a defendant's substantial assistance, the docketing of such a motion does not bind a sentencing court to abdicate its responsibility, stifle its independent judgment, or comply blindly with the prosecutor's wishes.

The government, seeking a more prominent role in the decisionmaking process, points out the Commission's advice that

---

**5.** Available statistics reflect the Commission's success in achieving this differential. Of 31,785 dispositions reported in 1991, 11.9 percent involved substantial assistance departures where-

as only 7.5 percent involved all other departures combined. *See* 1991 United States Sentencing Commission Ann.Rep. at 133–35.

"[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." U.S.S.G. § 5K1.1, comment. (n. 3). But, this advice, although sound, was never intended to rein in the district court's discretion concerning the need for, and extent of, a downward departure once a government motion is on the table. *See United States v. Castellanos,* 904 F.2d 1490, 1497 (11th Cir.1990). Rather, Application Note 3 sets forth the suggested degree of deference that should be afforded to the prosecution's assessment of the facts surrounding a defendant's assistance and intimates that, particularly in difficult cases, the sentencing court ought not to "inquire too intrusively into the government's file" on this delicate subject. *Spiropoulos,* 976 F.2d at 163 n. 5; *see also Keene,* 933 F.2d at 714 (observing that the "prosecutor is in the best position to know whether the defendant's cooperation has been helpful"). When all is said and done, it remains the district judge's decision—not the prosecutor's—whether to depart, and if so, to what degree.

2. *Relevant Factors.* Although the district court's discretion in passing upon a section 5K1.1 motion is wide, it is not unbridled. The guideline itself provides that:

> The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

U.S.S.G. 5K1.1. While the Commission's list is representative rather than exclusive, the five enumerated factors should be considered the mother lode of substantial assistance inquiries. A district court, faced with a section 5K1.1 motion, must at a bare minimum indicate its cognizance of these factors. In the typical case the court would also do well to make specific findings regarding each item.

■■■ The open-ended nature of the statutory list does not mean that a district court may consider any datum it pleases when passing upon a section 5K1.1 motion. As a basis for departing, a court may consider mitigating factors only to the extent that they can fairly be said to touch upon the degree, efficacy, timeliness, and circumstances of a defendant's cooperation.[6] *See United States v. Chestna,* 962 F.2d 103, 106–07 (1st Cir.) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 334, 121 L.Ed.2d 251 (1992); *United States v. Thomas,* 930 F.2d 526, 528–29 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991). After all, the substantial assistance provision is not to be used as a mechanism for short-circuiting other, more restrictive provisions of the sentencing guidelines. *See United States v. Hall,* 977 F.2d 861, 865 (4th Cir.1992).[7]

A somewhat different situation obtains in respect to the factors that a court may consider as a means to remain within, or incrementally closer to, the GSR. Since the sentencing range itself is an expression of Congress's will, a district court retains broad discretion to exhume factors unrelat-

---

**6.** The narrowing effect of this circumscription should not be exaggerated. The factors that legitimately relate to a defendant's cooperation may be many and varied. *See* U.S.S.G. § 5K1.1, comment. (backg'd) ("The nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis.").

**7.** As this logic makes clear, the government and the appellants are incorrect in suggesting here that a district court is *obliged* to consider factors such as proportionality when deciding whether, or how much, to depart under section 5K1.1. *See United States v. Kohl,* 972 F.2d 294, 299 (9th Cir.1992); *Richardson,* 939 F.2d at 139.

ed to substantial assistance before burying the GSR. *See, e.g., United States v. Mittelstadt*, 969 F.2d 335, 336–37 (7th Cir.1992) (ruling that the district court did not abuse its discretion in considering defendant's chronic alcoholism on a section 5K1.1 motion); *Carnes*, 945 F.2d at 1014 (holding that the benefit a defendant received from the prosecution's decision not to press an additional charge was a permissible ground for limiting the extent of a downward departure). Even if the five factors enumerated in section 5K1.1 weigh in a defendant's favor, the district court may, on the basis of other considerations, not constitutionally proscribed, *cf., e.g., Wade*, — U.S. at — – —, 112 S.Ct. at 1843–44; *United States v. Drown*, 942 F.2d 55, 60 (1st Cir.1991), decide to forgo or curtail a downward departure for substantial assistance.

In sum, the limitations on the variety of considerations that a court may mull in withholding or curtailing a substantial assistance departure are not nearly so stringent as those which pertain when a court in fact departs downward. This seeming paradox is neither unusual nor unsettling; indeed, it is this very quality of unequal centrifugal and centripetal forces that helps distinguish discretionary departure provisions like section 5K1.1 from the sentencing guidelines' array of mandatory adjustment provisions like U.S.S.G. § 3E1.1 (adjustment for acceptance of responsibility) and U.S.S.G. §§ 3B1.1, 3B1.2 (adjustment for aggravating or mitigating role in the offense).

 3. *Weighing the Factors.* Once the government files a section 5K1.1 motion, weighing the relevant factors in order to decide whether to depart (and if so, by how much) is something best done by the sentencing court. *United States v. Atkinson*, 979 F.2d 1219, 1226 (7th Cir.1992); *Thomas*, 930 F.2d at 531. In the section 5K1.1 milieu, as elsewhere, the court of appeals will, to the extent of its jurisdiction, review discretionary decisions only for abuse of discretion; and we will review the extent of a departure based on an accept-

able set of factors only to ensure reasonableness. *See Diaz–Villafane*, 874 F.2d at 49.

### D. *Summing Up.*

We rule today that the legal standard for departure is materially different under U.S.S.G. § 5K1.1 than under U.S.S.G. § 5K2.0. A district court confronted with a government motion for departure pursuant to section 5K1.1 must consider the factors specifically enumerated in that guideline as well as other factors which in the court's judgment bear on the decision. In so doing, however, the court must recognize that mitigating concerns are relevant only insofar as they relate to a defendant's substantial assistance. In all events, the district court retains wide discretion concerning whether to depart under section 5K1.1; and, if it decides that a departure is warranted, it also possesses appreciable discretion in fixing the extent of the departure.

 In these cases, the district court premised its decision not to depart on a legal standard designed to hold departures to a minimum—a standard that has no relevance in respect to substantial assistance departures. And, although many of the integers that enter into the section 5K2.0 calculus can be considered for certain purposes under section 5K1.1, we are unable confidently to say on this record that the judge's error was harmless. Thus, we remand to the district court with instructions to vacate appellants' sentences and conduct new sentencing hearings. We see no need to require that a different judge preside over the resumed proceedings. *Cf., e.g., United States v. Diaz–Bastardo*, 929 F.2d 798, 800–01 (1st Cir.1991).

### III. THE COURT'S CHOICE OF AN ANALOGOUS GUIDELINE

Given the fact that new sentencing hearings will be held, we decline, with one exception, to address appellants' other challenges to the proceedings below.[8] The ex-

---

**8.** Because we do not reach appellants' "reasonableness" argument, we take no view of the suitability *vel non* of the sentences originally imposed.

ception relates to appellants' assertion that the district court, confronted by a lacuna in the guidelines, failed properly to select the most analogous guideline as a starting point for computing the GSR. We treat with this assertion because we can envision no circumstances in which a choice of this nature will not face the district court on remand.

We set the stage. The Sentencing Commission has yet to promulgate an offense guideline covering the offense of conviction in these cases, *i.e.*, the making of illicit payments to a municipal official in violation of 18 U.S.C. § 666(a)(2). In such circumstances, U.S.S.G. § 2X5.1 directs the district court to "apply the most analogous offense guideline" unless no "sufficiently analogous guideline" can be found.[9] Appellants urged that U.S.S.G. § 2C1.2 (dealing in part with the giving of a gratuity to a public official) provided the best basis for a comparison. The district court rejected this exhortation and found U.S.S.G. § 2C1.1 (dealing with bribery of, and extortion by, public officials) to be the most analogous guideline.

We discern no error in this determination. Before explaining our reasoning, however, we first address the appropriate standard of appellate review.

### A. *Standard of Review.*

 An appellate tribunal must "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (1988). We have interpreted this statute as requiring, in most instances, that the court of appeals review a trial court's application of a sentencing guideline to the facts only for clear error. *See, e.g., United States v. Ruiz,* 905 F.2d 499, 507 (1st Cir.1990); *United States v. Wright,* 873 F.2d 437, 444 (1st Cir.1989). The propriety of using the clearly erroneous standard in scrutinizing a sentencing

court's application of law to fact will depend largely on whether the question presented is essentially factual or essentially legal; the more fact-dominated the question, the more likely it is that clear-error review will be appropriate. *See United States v. Ortiz,* 878 F.2d 125, 126–27 (3d Cir.1989); *United States v. Daughtrey,* 874 F.2d 213, 217–18 (4th Cir.1989); *see also Roland M. v. Concord School Comm.,* 910 F.2d 983, 990–91 (1st Cir.1990) (discussing desirability of clear-error review in instances where a district court must find the facts and then make an evaluative judgment, applying a defined legal standard to the facts), *cert. denied,* — U.S. —, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991).

In these cases, a series of factors suggests that the contested issue lies closer to the fact-intensive end of the continuum: there is no indication that the district court misunderstood the choices presented under the guidelines; there is no articulation of a dispute concerning the reach of the provisions proffered as suitable analogs; and there is no necessity for us, in resolving the controversy, to determine the far broader (and essentially legal) question of whether a particular offense guideline will *always* be most analogous to 18 U.S.C. § 666(a)(2). Simply stated, the issue before the district court was whether appellants' actions in "corruptly giv[ing]" payoffs to municipal officials "with intent to influence or reward" those officials in connection with city contracts, 18 U.S.C. § 666(a)(2), were more akin to providing a gratuity, U.S.S.G. § 2C1.2, than to passing a bribe, U.S.S.G. § 2C1.1. This issue is essentially factual. It required the court, in effect, to find the facts pertaining to the offenses of conviction and make evaluative judgments concerning those facts (including a judgment as to whether appellants' payments were intended to "influence," rather than "reward," city officials). Accordingly, we

---

9. In the court below, appellants argued that a particular offense guideline, U.S.S.G. § 2C1.2, was a better fit than U.S.S.G. § 2C1.1 (the offense guideline deemed most comparable by the district judge). On appeal, Butterworth attempts for the first time to raise the different issue of whether *any* sufficiently analogous

guideline exists. This issue has not been properly preserved for appellate review. *See United States v. Slade,* 980 F.2d 27, 30 (1st Cir.1992) (reiterating the established rule that points not argued in the district court cannot be raised for the first time on appeal).

apply the clearly erroneous standard of review.[10]

### B. *The Appropriate Analogy.*

■ The essential difference between a bribe and an illegal gratuity is the intention of the bribe-giver to effect a *quid pro quo*. *See United States v. Muldoon*, 931 F.2d 282, 287 (4th Cir.1991). Hence, a bribery guideline, section 2C1.1, applies when a transfer of money has "a corrupt purpose, such as inducing a public official to participate in a fraud or to influence his official actions." U.S.S.G. § 2C1.1, comment. (backg'd). The gratuity provision, on the other hand, does not include a corrupt purpose as an element of the offense. *See* U.S.S.G. § 2C1.2, comment. (backg'd).

■ This distinction between the two offense guidelines is brought into bold relief by the differences between the statutes to which the guidelines relate. The bribery guideline applies, for example, to the offense of "corruptly giv[ing] … anything of value" to a federal official with the intent of "influenc[ing] any official act" or "inducing" the official to violate his or her lawful duty. 18 U.S.C. § 201(b)(1) (1988). This seems virtually to mirror the statute of conviction here, which, among other things, criminalizes "corruptly giv[ing] … anything of value to any person, with intent to influence" a decision of state or local government. 18 U.S.C. § 666(a)(2). The common thread that runs through both statutes is the intent of the payer, by the greasing of palms, to affect the future actions of a public official. In contrast, the gratuity guideline refers to crimes of a somewhat different genre. It applies, for example, to persons who give things of value to federal officers "for or because of any official act performed or to be performed by such public official." 18 U.S.C. § 201(c)(1)(A) (1988). Notably, under the

gratuity guideline, there is no requirement that the gift be "corruptly" given with the intent to affect the payee's mindset or actions. Phrased another way, the gratuity guideline presumes a situation in which the offender gives the gift without attaching any strings, intending it instead as a reward for actions the public official has already taken or is already committed to take.

■ With these distinctions in mind, appellants' contention is easily dispelled. Here, Mariano admitted that he paid large sums of money in order to forestall city officials from reassigning the work. Butterworth likewise admitted that he forked over $100,000 so that he could retain valuable contracts which Pawtucket might otherwise have redirected to a competitor. Since Mariano and Butterworth each sought to receive a *quid pro quo*, in the form of future (favorable) treatment, and since the offenses to which they pleaded guilty involved corrupt intent, the district court's determination that their actions were more akin to bribe-giving than to gift-giving was not clearly erroneous.

To be sure, appellants protest that they were victims, not perpetrators, of an extortionate scheme, and that they received nothing extra in return for their magnanimity. We are unmoved by these plaints. The fact that appellants, in some sense, may have been the quarry of a pack of venal politicians, and did not themselves initiate the forbidden transactions, does not negate the district court's choice of a guideline analogy. Bribery and extortion are not mutually exclusive concepts. *See, e.g., United States v. Hathaway*, 534 F.2d 386, 395 (1st Cir.), *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976). And the fact that appellants had already received sewer-line and stadium repair con-

---

**10.** In the event no sufficiently analogous guideline exists, the sentencing court must resort to the general principles adumbrated in 18 U.S.C. § 3553(b) (1988) (providing that, in the absence of an offense guideline, the court shall impose an "appropriate" sentence, having due regard for, *inter alia*, the gravity of the offense; the need for punishment, deterrence, retraining, and the like; and "the relationship of the sen-

tence imposed to sentences prescribed by [other] guidelines … and the applicable policy statements of the Sentencing Commission"). Because that scenario has no bearing here, *see supra* note 9, we find inapposite the standard of review limned in *United States v. Gabay*, 923 F.2d 1536, 1545 (11th Cir.1991) (employing *de novo* review where defendant contended that no sufficiently analogous guideline existed).

**1160**

tracts at payoff time is also not outcome determinative. Despite the chronology, the district court could supportably find that Mariano and Butterworth corruptly intended their illicit payments to influence the future actions of the late, unlamented Sarault administration.

We need go no further. Having willingly sat down to sup with the devil, appellants cannot now expect the courts to swallow their tale uncritically. The guideline analogy chosen by the district court was well within its purview. *See United States v. St. Cyr*, 977 F.2d 698, 706 (1st Cir.1992) (holding that "when there are two plausible views of the record, the sentencing court's adoption of one such view cannot be clearly erroneous"); *Ruiz*, 905 F.2d at 508 (similar).

*The defendants' sentences are vacated and the cases are remanded for resentencing.*