# United States Court of Appeals
## For the First Circuit

No. 01-2702

UNITED STATES OF AMERICA,

Appellee,

v.

EDWARD K. MILLS, a/k/a KWAME MILLS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, Chief U. S. District Judge]

Before

Torruella, Circuit Judge,
John R. Gibson,[*] Senior Circuit Judge,
and Howard, Circuit Judge.

Joseph F. Savage, Jr., with whom Richard Myrus, Fred H. Nemeth, and Testa, Hurwitz & Thibeault were on brief, for appellant.
Kevin P. McGrath, with whom Michael J. Sullivan, United States Attorney, and Dina Michael Chaitowitz, Assistant U. S. Attorney were on brief, for appellee.

May 14, 2003

[*]Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

**JOHN R. GIBSON, <u>Senior Circuit Judge</u>**.  Edward K. Mills pleaded guilty to a one-count information charging him with racketeering in violation of 18 U.S.C. § 1962(c) (2002).  At sentencing, the district court considered the government's motion under Sentencing Guideline § 5K1.1 asking for a departure on account of Mills' substantial assistance, but refused to depart. Mills argues that (1) the district court misled him at the plea hearing into believing his disclosures about a murder conspiracy would be used only for reducing his sentence; (2) the government breached its plea agreement with him by failing to argue that information provided by Mills pursuant to the agreement should not be considered by the court; (3) the district court erred by invoking a categorical "murder is different" sentencing policy, ignoring its responsibility to consider the guideline factors as enumerated in Sentencing Guideline § 5K1.1; and (4) the district court erred under § 5K1.1 by refusing to consider the full extent of assistance rendered by Mills' girlfriend at Mills' behest.  We vacate the sentence imposed by the district court and remand for resentencing consistent with this opinion.

On March 29, 2000, in his plea hearing before the district court, Edward K. Mills waived his right to a grand jury and pleaded guilty to a charge under 18 U.S.C. § 1962(c).  The one-count information alleged that Mills agreed to participate with a group of individuals in an organization whose primary purpose was

to coordinate the distribution of crack cocaine. The underlying predicate acts included two acts of money laundering, conspiracy to murder, and interstate travel in aid of racketeering.

The government had originally offered Mills a plea bargain in which he would serve a maximum of twenty years, with credit for state time served. The government had also discussed with Mills in a proffer letter the possibility of his providing information about local drug trafficking and several unsolved murders. Mills chose to cooperate with the government's investigation in exchange for a favorable government recommendation at sentencing, which he hoped would result in a lower sentence than the twenty years the government offered if he did not cooperate. Mills and the government eventually arrived at an agreement which included the following:

> Notwithstanding the provisions of U.S.S.G. § 1B1.8(b)(5) and the commentary thereto, the U.S. Attorney agrees to take the position that, at the time of sentencing, information provided by Defendant pursuant to this Agreement should not be used either in determining where within the applicable guideline range to sentence Defendant or in determining whether, or to what extent, a departure from the Sentencing Guidelines is warranted.

At the plea bargain hearing, the district court stated that under 18 U.S.C. § 1962(c), Mills could face up to a twenty-year sentence and that the court was under no obligation under the plea agreement to grant a downward departure.

Mills cooperated with authorities[1] and testified at the trial of John Tibbs, an associate of Mills who committed several murders.[2]  In its § 5K1.1 motion, the government emphasized that prior to Mills' cooperation, the government had no evidence of who had committed these murders, and that Mills had helped free an innocent man who had been wrongly convicted of one of these murders.  The government also stated that Mills had "limited involvement" in one murder and his involvement in another consisted only of driving Tibbs to and from the scene.  In its supplemental sentencing memorandum, the government took the position that based on Mills' cooperation, the danger he exposed himself to, the relative culpability of his co-defendants, and the sentences they received, the court should depart downward and Mills should receive a sentence of ten years.  Later, during Mills' sentencing hearing, the district court acknowledged that Mills had "displayed enormous personal courage" and that the extent of his cooperation equaled or exceeded anything the court had ever seen.  However, the court declined to follow the parties' sentencing recommendations in light of Mills' involvement in several of the murders and his leadership role in a dangerous, violent enterprise.  The court then sentenced

---

[1]Most of the record before us and the briefs have been filed under seal, and such materials have been fully considered even if not set out in detail in this opinion.

[2]Following the plea hearing but before sentencing, Chief Judge Young observed a portion of Mills' testimony in the Tibbs murder trial, which transpired in another judge's courtroom.

Mills to twenty years, with a two-year credit for time served on a state sentence for drug trafficking.

## I.

Mills first argues that the court misled him at the plea hearing into believing that his disclosures regarding the murder conspiracy would be used only for the purpose of reducing his sentence. During the plea hearing, the court discussed the possibility of using information about the murder conspiracy in its departure analysis. Mills did not object. Since he did not object, we have limited power to correct an error that was not timely raised before the district court. United States v. Olano, 507 U.S. 725, 732 (1993). An error not objected to at the plea hearing is reversible only where the error is plain, affects the defendant's substantial rights, and seriously affects the fairness of the proceeding. Id. See also United States v. Vonn, 122 S. Ct. 1043, 1046, 1048 (2002).

Mills does not dispute that the district court is permitted, for the purposes of departure, to consider self-incriminating information he provided pursuant to the plea agreement (i.e. his involvement in the murder conspiracy). See USSG § 1B1.8(b)(5). Rather, he claims that the court misinformed him at the plea hearing about how it would use this information in its departure calculus:

THE COURT: And I will go into the melange of factors that

I try to balance and that I take responsibility for.
But, because he's accepted responsibility, if you will
for this fourth predicate act [the conspiracy to murder]
now, can I consider that at all as to where the
appropriate sentence is?  Or, am I not to consider that
at all?
MR. HEINRICH [Assistant U.S. Attorney]: Well, your Honor,
let me answer it this way.  In terms of setting your
base, I don't think that you should consider it.  In
terms of considering all the factors and however you
weigh those both, whatever internal processes and
external, Mr. Mills' cooperation would be, would include
in both this instance and in other instances admitting
responsibility for other criminal activity.  And I think
that the Court in any case would take account of what it
is he's cooperating on, how he knows about it, whether he
participated in it--
THE COURT: All right.
MR. HEINRICH: --and the like in determining how far to
come down in that connection.

Mills argues that based on the Assistant U.S. Attorney's

description of the law and based on the court's approval of this

description,[3] he was led to believe that his involvement in the

murder conspiracy would be used only "in determining how far to

come down" in a departure, not in denying a departure altogether.

Mills cites U.S. v. Conway, 81 F.3d 15 (1st Cir. 1996), in support

---

[3]As stated to the court by Mr. Heinrich, the factors to be
considered regarding departure included not only Mills' cooperation
in exposing the murder conspiracy but also "how he knows about it,
whether he participated in it."  The court could also consider that
Mills' cooperation involved "in both this instance and in other
instances admitting responsibility for other criminal activity."
    The court approved this description and asked Mr. Mills
directly: "You understand what Mr. Heinrich and I are talking about
here, Mr. Mills, do you think?"  When Mills answered "Yes," the
court pressed him again, "You understand that if you plead guilty
and if they ask me to go down, I'll have to balance a variety of
factors."  Again Mills answered "Yes," and again, the court checked
to make sure that Mills understood what Mr. Heinrich had said about
Mills' cooperation.

of his argument that we should remand for re-sentencing because the district court misinformed him about its departure calculus.

A district court must not misinform the defendant entering a guilty plea about the court's role at sentencing. The court is not bound to comply with the prosecutor's recommendation for sentencing, and the defendant should be aware of this. See Conway, 81 F.3d at 17. To prevent confusion on the defendant's part, Fed. R. Crim. P. 11(c) provides that:

> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> > (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, <u>the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances</u> ...(emphasis added).

In <u>Conway</u>, this court held that the district court's explanation of the plea agreement was misleading when the court made no distinction between the government's obligation to follow the plea agreement and the court's freedom to sentence according to the Guidelines regardless of the parties' recommendations. The defendant was mistakenly given the impression that information he gave pursuant to the plea agreement could not be used against him

by the court, so we remanded for the court to rehear the motion for departure and to make new findings.

In Mills' case, on the other hand, the district court made it clear that the court was under no obligation to depart under the plea agreement. The district court repeatedly told Mills that a substantial assistance motion by the government did not guarantee a departure:

> THE COURT: Now, if they don't ask me [for a departure], assuming what's said here about how the guidelines work out is right, then I have no way of going lower than 20 years.
> Do you understand that?
> MILLS: Yes.
> THE COURT: Let's consider it the other way. Even if they do ask me, I'm not part of this plea bargain between you and the government.
> Do you understand that?
> MILLS: Yes.
> THE COURT: <u>And I don't have to go lower than the 20 years. I know I can't go higher than 20 years, but I don't have to go lower.</u> You understand that?
> MILLS: Yes.
> THE COURT: And you understand, I mean, I certainly will try to be fair and just, but I'm not bargaining now, I'm not part of any of this, I'm just trying to make sure you know what may happen to you.
> Do you understand that?
> MILLS: Yes, I do. (emphasis added).

Mills was thus informed that the court was not bound by the plea agreement, and that in determining how far to depart, the court could choose not to depart at all. In light of the record as a whole, Mills could not reasonably have understood the court to have promised to consider murder-related evidence only for purposes of deciding the length of a granted departure. We conclude that there

-8-

is no error in this respect.

## II.

Second, Mills argues that the government breached its plea agreement. Mills concedes that he did not raise this issue below. "When a defendant has knowledge of conduct ostensibly amounting to a breach of a plea agreement, yet does not bring the breach to the attention of the sentencing court, we review only for plain error." United States v. Saxena, 229 F.3d 1, 5 (1st Cir. 2000). In order to show plain error, Mills must establish that (1) an error occurred, (2) the error was plain, (3) it affected his "substantial rights," and (4) it "adversely impacted the fairness, integrity or public repute of judicial proceedings." United States v. Riggs, 287 F.3d 221, 224 (1st Cir. 2002).

The government had promised to take an affirmative position that information provided pursuant to the plea agreement should not be used at sentencing. In particular, the plea agreement stated:

> Notwithstanding the provisions of U.S.S.G. § 1B1.8(b)(5)[4] and the commentary thereto, the U.S. Attorney agrees to take the position that, at the time of sentencing, information provided by Defendant pursuant to this

---

[4]USSG § 1B1.8(b)(5) states: "The provisions of subsection (a) [which limit the use of self-incriminating information provided pursuant to a plea agreement in determining the guideline range] shall not be applied to restrict the use of information: . . . (5) in determining whether, or to what extent, a downward departure from the guidelines is warranted pursuant to a government motion under § 5K1.1 (Substantial Assistance to Authorities)."

> Agreement should not be used either in determining where within the applicable guideline range to sentence Defendant or in determining whether, or to what extent, a departure from the Sentencing Guidelines is warranted.

Mills argues that the government failed to take the agreed upon position.

The record shows that the government did, in fact, argue vigorously that the court should not use the information discussed in the plea agreement as part of its departure calculus. At sentencing, the government advanced two arguments in asking the court not to consider Mills' involvement in the murder conspiracy. First, the Assistant U.S. Attorney pointed out that "given the nature of the agreement" and given the nature of law enforcement, the court should not punish Mills for admitting more serious conduct in the process of helping solve gang and drug-related homicides. Second, the prosecutor argued that although the proffer agreement protected Mills from being prosecuted for self-incriminating statements, he still took tremendous risks in confronting and exposing other persons involved in violence. Furthermore, the government told the court that without Mills' assistance, the prosecution would have had no information or evidence that Mills was involved in these murders. These arguments indicate that the government was encouraging the court not to consider Mills' role in the murder conspiracy for purposes of punishment, but rather to consider his role only insofar as his

cooperation had aided the murder investigation and prosecution.

Under the Sentencing Guidelines, the government could not withhold the information about Mills' involvement in the murder conspiracy from the court[5], and the court was free to consider it on its own under the provisions of and commentary on USSG § 1B1.8(b)(5)--a provision explicitly referred to in the plea agreement itself.

Moreover, although the government acknowledged Mills' role in the murder conspiracy by disclosing his involvement,[6] the government could only explain his remarkable assistance in the context of his involvement. The government did not violate or renege on its agreement with Mills; instead, it tried to make a compelling argument to the court as to why Mills deserved a departure. We conclude that the government did not breach the plea agreement.

---

[5]Although the court can choose not to consider information at sentencing, the government has an obligation not to withhold any relevant information from the court. See USSG § 1B1.8, comment. (n.1).

[6]Mills specifically objects to the government's comment to the court that Mills should receive a departure "despite the fact that he was involved in those murders." The Assistant U.S. Attorney made this statement in response to the court's expressed reservation about showing leniency to a participant in a murder conspiracy. The court was not asking the prosecution whether this involvement should be considered; rather, with the court's decision to weigh this information, it was asking why Mills' participation in the murder conspiracy should be discounted.

Third, Mills argues that the district court based its decision not to depart on a per se rule that was inconsistent with Sentencing Guideline § 5K1.1.  Mills claims that the district court erred by stating a categorical rule that a downward departure for substantial assistance would not be granted, no matter what the circumstances, in cases involving murder.

In general, a district court's denial of departure is discretionary and not appealable.  See United States v. Mariano, 983 F.2d 1150, 1153 (1st Cir. 1993).  There are, however, three situations in which a refusal to depart is appealable, including: "(1) the refusal to depart involves an incorrect application of the Sentencing Guidelines; (2) the refusal to depart otherwise violates the law, or (3) the district court mistakenly believed that it lacked the discretion to depart."  United States v. Dewire, 271 F.3d 333, 337 (1st Cir. 2001) (citations omitted).  Mills raises a challenge of the first kind, arguing that the district court failed to apply or misapplied Sentencing Guideline § 5K1.1 to his sentence.[7]

---

[7]We have jurisdiction over this issue on appeal if the sentence was imposed "in violation of law" or through "an incorrect application of the sentencing guidelines."  18 U.S.C. § 3742(a) (2000).  In United States v. Saldana, 109 F.3d 100, 103 (1st Cir. 1997), we held that a sensible reading of 18 U.S.C. § 3742(a) is that "the defendant has a right to appeal to present a *claim* of legal error, or at least a colorable claim."  In this case, Mills is arguing that the district court committed a legal error by invoking a rigid sentencing policy against departures in murder

Before a court can consider a departure for substantial assistance, the government must first move for a downward departure under § 5K1.1.  See <u>Wade</u> v. <u>United States</u>, 504 U.S. 181, 185 (1992).  The district court must then determine whether or not to depart from the sentencing guideline range, and if so, how far to depart.  <u>Mariano</u>, 983 F.2d at 1155.  Sentencing Guideline § 5K1.1 requires the district court to consider a range of factors in evaluating a substantial assistance motion.  It states:

> (a) [t]he appropriate reduction shall be determined by the court for reasons stated that <u>may include, but are not limited to</u>, consideration of the following:
>
> > (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
> > (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
> > (3) the nature and extent of the defendant's assistance;
> > (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
> > (5) the timeliness of the defendant's assistance. (emphasis added).

We have held that a "district court, faced with a section 5K1.1 motion, must at a bare minimum indicate its cognizance of these factors."  <u>Mariano</u>, 983 F.2d at 1156.

---

cases and ignoring the requirements of § 5K1.1 in evaluating Mills' substantial assistance.  This is a plausible reading of the district court opinion and a colorable claim of legal error.

The use of the phrase "may include, but are not limited to" in § 5K1.1 indicates that the district court may also examine factors beyond those enumerated in § 5K1.1(a)(1)-(5). See United States v. Chestna, 962 F.2d 103, 106-107 (1st Cir. 1992). And since the court is not limited to the § 5K1.1 factors alone, the court may also look at other factors which touch upon the degree, efficacy, timeliness, and circumstances of the defendant's cooperation. Mariano, 983 F.2d at 1156.

In Mariano, we explained that in authorizing departures for substantial assistance, section 5K1.1 serves a dual purpose. "In addition to permitting ex post tailoring of defendants' sentences to reflect meaningful assistance rendered between the dates of apprehension and sentencing, it provides defendants, *ex ante*, with an incentive to cooperate in the administration of justice." 983 F.2d at 1156 (emphasis in original). This second purpose--encouraging and obtaining cooperation--is particularly important in the government investigation and prosecution of gang violence and drug trafficking.

In Mills' case, the district court showed its awareness of the requirements of § 5K1.1. The court explained how it would hear arguments in evaluating the government's motion:

> There is a motion under 5K. That motion is allowed. As you understand, don't anyone take any particular comfort from that. What that does is give me the discretion to depart downward.

-14-

The court looked at Mills' sentencing memorandum, paying particular attention to the section of Mills' memorandum which analyzed reductions for substantial assistance. The court found that the information provided was accurate by a fair preponderance of the evidence. In addition, the district court discussed the government's 5K1.1 motion and found that Mills' assistance as described in the government's motion was "as great, if not greater than any other case with which I am personally aware or which has been referenced here." However, despite this remarkable cooperation, the court was troubled by Mills' case. The court explained to the parties:

> My problem is that this man has been involved in crimes of violence of murder. That's one. And the second thing is, I really do think he's the leader here. I've so found. He's the leader. And to me that makes a difference here. And so that's really where the argument should be.

The district court listened to the government and defense counsel make arguments as to why Mills' substantial assistance should still result in a 5K1.1 departure. The government explained that while Mills was a leader of the organization, he was one of several leaders, and that although he was directly involved in several murders, he was neither the instigator nor the driving force behind the decision to resort to violence.[8] Mills' counsel followed up on

---

[8]The Assistant U.S. Attorney stated that although Mills was directly involved in the murders, there were several mitigating circumstances. The murders occurred during a particularly violent three-month fight between rival gangs. Two of the murders were

-15-

these comments by re-emphasizing Mills' "truly unique" cooperation and the substantial benefits that resulted from his assistance.[9] Based on these circumstances, the government argued for a sentence of ten years and defense counsel for a sentence of eight years and four months.

In the end, the district court remained unconvinced and refused to depart. In explaining the resulting eighteen year sentence, the court concluded:

> Here's what's driving the sentence. I treat murder different. I think that's the appropriate judgment of society. I recognize that your sentence is a maximum of 20, and I have discounted the 24 months for the time you've already served as part of this conspiracy. But I truly treat murder different. I see no way to do otherwise.
> Alternatively, I believe and I have found you were the leader of this dangerous, violent enterprise. And so that's an appropriate sentence--

---

part of a dispute between Mills' group and another gang which was "ten times more violent that the Mills organization was." The third murder, the homicide of Steven Sealey, was devised and carried out by Tibbs, who "was the one who was promoting the violence, counseling that we need to get these, quote, unquote, these people in order to prevent them from getting us first. And that he [Tibbs] was the violent force behind [Mills' organization]." Furthermore, while it was unwise of Mills to associate himself with Tibbs, at some point, according to the Assistant U.S. Attorney, Mills "got in over his head."

[9]Mills' counsel pointed out that Mills volunteered, without any suggestion from the government, to wear a recording device and speak with Tibbs in prison in order to provide the government with sufficient evidence to convict Tibbs for murder; that Mills provided exculpatory evidence for Marlon Passley who otherwise would have served a life sentence for a crime he didn't commit; and that because of his extensive cooperation, Mills had been subject to threats and been attacked in prison.

The Sentencing Guidelines do not contain any rule making § 5K1.1 departures unavailable to defendants involved in murder conspiracies or to defendants who are leaders in violent or dangerous criminal enterprises. Rather, the Sentencing Commission has directed the district court, upon receiving a § 5K1.1 motion, to review the extent of cooperation and exercise its discretion in determining the extent of the departure on "an individual basis." See U.S.S.G. § 5K1.1, comment. (backg'd.).

The district court's use of a self-imposed sentencing practice or policy in evaluating a substantial assistance motion presents the possibility, if not the likelihood, that the mandate of § 5K1.1 of the Sentencing Guidelines to conduct an individualized evaluation may be violated. See United States v. King, 53 F.3d 589, 590 (3d Cir. 1995); see also United States v. Johnson, 33 F.3d 8, 10 (5th Cir. 1994).

In its supplemental brief, the government observed that if the district court had refused to consider the 5K1.1 motion altogether, such conduct probably would have been appealable. For example, if the court had stated, "I will not grant a 5K1.1 departure for someone who has been involved in crimes of murder, regardless of the extent of cooperation and regardless of the circumstances surrounding the murder," then the court would have failed to properly exercise its discretion.

While the district court did not explicitly say that it would never depart where the defendant was guilty of murder conspiracy,

-17-

its comments could be interpreted as amounting to the same thing. And if so, the court avoided making the individualized evaluation required by § 5K1.1. The Assistant U.S. Attorney provided very specific information regarding Mills' involvement in the murders. In addition, the defense counsel gave detailed information concerning the circumstances of Mills' cooperation. Because the district court's response to this extensive information was simply: "I treat murder different," we are unable to determine whether the court engaged in an appropriate § 5K1.1 individualized evaluation. Not every ambiguity warrants a remand, but there are additional circumstances in this case that suggest that the district court may well have used a per se rule, and upholding such a rule could have serious implications for the workings of the substantial assistance departure scheme and for future defendants considering plea bargains with the government. We hereby vacate the sentence and remand for resentencing consistent with this opinion.

## IV.

Finally, Mills argues that the district court erred by failing to credit him with the assistance rendered by his girlfriend in the court's determination whether or not to depart. Essentially, he argues that the district court stated that it was precluded as a matter of law from granting a downward departure. He points to the district court's statement: "I do not take into account in imposing this sentence the devotion of the young lady who loves you so much that she puts her ownself at risk."

In determining whether a sentencing court stated a legal conclusion or simply exercised its discretion, we look at the entire record. United States v. Morrison, 46 F.3d 127, 130 (1st Cir. 1995). We do not consider a single statement in a vacuum, but instead, consider the statement within the context of the hearing as a whole. Id. at 131.

The court concluded the sentencing hearing by acknowledging the extraordinary nature of Mills' cooperation:

> I recognize, and I do not think Mr. Savage overstated, that you have displayed enormous personal courage. I found and I stand by it, that the extent of your cooperation equals or exceeds anything I have seen. I do not take into account in imposing this sentence the devotion of the young lady who loves you so much that she puts her ownself at risk.

The court's insistence on not taking into account Mills' girlfriend's assistance appears to have been an effort to emphasize that Mills' own assistance was unique and provided enough evidence to support a § 5K1.1 motion by itself. § 5K1.1(a)(3) states that the court may consider the "nature and extent of the defendant's assistance." § 5K1.1(a)(4) adds that the court may take into account "any danger or risk of injury to the defendant or his family resulting from his assistance." Even though his girlfriend's cooperation might constitute part of the substantial assistance provided by Mills, the district court's decision to focus on Mills' own contributions, rather than his girlfriend's assistance, fell within its mandate to look at the "nature and

-19-

extent" of the defendant's assistance.  This decision was within the court's discretion. We therefore dismiss this final claim for lack of jurisdiction.

For the foregoing reasons, we vacate the sentence of Edward K. Mills and remand for resentencing consistent with this opinion.