

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-2001

# United States v. Torres

Precedential or Non-Precedential:

Docket 00-5209

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"United States v. Torres" (2001). *2001 Decisions*. Paper 111.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/111

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 22, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-5209

UNITED STATES OF AMERICA

v.

CHARLES TORRES,
        Appellant

APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

(D.C. No. 95-cr-00147)
District Judge: The Honorable William H. W alls

ARGUED SEPTEMBER 14, 2000

BEFORE: BECKER, Chief Judge, NYGAARD, and AMBRO,
Circuit Judges.

(Filed: May 22, 2001)

        John V. Saykanic, Esq. (Argued)
        Miles R. Feinstein, Esq.
        1135 Clifton Avenue
        Clifton, NJ 07013

         Counsel for Appellant

George S. Leone, Esq.
Michael Martinez, Esq.
 (Argued)
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102

 Counsel for Appellees

OPINION OF THE COURT

NYGAARD, Circuit Judge:

Charles Torres appeals the eleven month sentence imposed on him under the United States Sentencing Guidelines after pleading guilty to one count of bank fraud in violation of 18 U.S.C. S 1344. At sentencing, the government had requested a downwar d departure pursuant to U.S.S.G. S 5K1.1 based on Torr es's substantial assistance in a federal investigation of police corruption and illegal gambling enterprises in northern New Jersey. According to the government, which submitted a six-page letter to the District Court exhaustively detailing and commending Torres's assistance, the cooperation lasted for approximately five years and eventually r esulted in the criminal convictions of thirty individuals on char ges of racketeering, extortion, and obstruction of justice. The District Court granted the S 5K1.1 motion but, despite the government's presentation, chose to r educe Torres's sentence by only one month.

In this appeal, Torres alleges that the District Court, when ruling upon the government's S 5K1.1 motion, committed a mistake of law or incorrectly applied the Guidelines in several ways. We reject these allegations of error, focusing with particular emphasis on Torres's contention that the Court failed to examine thefive sentencing factors listed in S 5K1.1 in a sufficiently thorough manner. Although we ultimately conclude that the District Court's examination was minimally adequate, and therefore reject this allegation of error, we stress that a sentencing court would be best served by car efully reciting

2

on the record the factors it consider ed and weighed in arriving at its downward departure decision. Finally, Torres further argues that the District Court err ed by failing to grant him a downward departure greater than the one month he received. With respect to this contention, we lack jurisdiction to review the District Court's discretionary decision to depart by only one month. See United States v. Khalil, 132 F.3d 897, 898 (3d Cir . 1997).

Accordingly, we will affirm the sentencing decision of the District Court.

I.

Torres's charge of bank fraud stems from his membership in the United Government Employees Federal Credit Union, a federally-chartered and insured financial institution in Union City, New Jersey. Torr es became a member of the credit union in 1987, and in April 1990, he began obtaining fraudulent loans. By February 1991, he had obtained eight fraudulent loans totaling mor e than $90,000. In his first application, for $21,026.45, he falsely represented his annual income as $50,000. The credit union approved the application. He obtained a second loan for $15,000 on May 30, 1990, after falsely r eporting an annual income of $75,000 and a $500,000 home. He obtained his third fraudulent loan ($20,000) by using the name of his business partner and failing to disclose his partner's outstanding debts. Less than a month later , Torres obtained a $5,000 line of cr edit by falsely reporting an income of $45,000. The credit union granted him a second line of credit for $5,000 on January 23, 1991, after he falsely reported an income of $50,000. T orres ultimately drew $9,000 against this credit extension. On February 25, 1991, he used his sister's name and financial information to obtain a $6,000 loan; that same day, he r eceived another $6,000 loan by using his brother's name. The next day, Torres obtained his eighth and final loan ($15,000) from the credit union by using his wife's name.

Torres pleaded guilty to bank fraud on March 31, 1995. Based on an offense level of fourteen and a criminal history category of II, the District Court sentenced him to twenty-

3

four months imprisonment and five years of supervised release. The court also ordered him to pay $30,000.00 in restitution and a $50.00 special assessment fee. Torres appealed this sentence, arguing, inter alia, that the District Court had abused its discretion by declining to reduce his offense level for acceptance of responsibility pursuant to U.S.S.G. S 3E1.1. We agreed, vacated the sentence, and remanded the case for resentencing. See U.S. v. Torres, No. 95-5831, (3d Cir. July 8, 1996).

Upon remand, the District Court granted the parties' joint requests for a continuance to allow T orres to cooperate in a federal investigation of police corruption involving illegal gambling enterprises in Union City, West New York, and several other northern New Jersey cities. On February 25, 2000, the District Court held a r esentencing hearing. The Court granted a two-level downwar d departure for acceptance of responsibility, lowering T orres's offense level from fourteen to twelve and his range of incarceration from eighteen to twenty-four months to twelve to eighteen months.

In addition, the government requested a downward departure pursuant to U.S.S.G. S 5K1.1 for Torres's substantial assistance. During the hearing and in its letter brief to the Court, the government str ongly recommended that Torres's sentence be reduced to probation. In the six-page letter brief, which comprehensively detailed the assistance that Torres had furnished, the government reported that Torres had "worked diligently and aggressively to provide genuine and ultimately very helpful assistance" in its investigation of police corruption involving illegal gambling enterprises. J.A. at 75. Torr es's cooperation had lasted for approximately five years, during which time Torres had helped to assemble crucial evidence by developing relationships with key players in the conspiracy and then tape-recording their inculpatory conversations. These efforts contributed significantly to obtaining an indictment and guilty plea from at least one Union City officer and furthered the investigation of police corruption that resulted in the indictment and prosecution of nine police officers and seven others on charges of racketeering, conspiracy, extortion, and bribery. See id. at 76. In sum,

4

the federal investigation yielded more than thirty convictions for racketeering, extortion, obstruction of justice, and other related offenses. 1 See id. at 77. Because of Torres's key role in the securing of these convictions, the government's letter, in various places, characterized Torres's assistance as "substantial and important," "vital," "diligent[ ] and aggressive,""very helpful," "extraordinary," "pro-active," "tremendously significant," "immensely significant," and of "enormous benefit." Id. at 72-76.

Torres's attorney also argued in favor of the government's motion and recommended the imposition of a pr obationary sentence. He emphasized that Torres pr ovided "extraordinary assistance to the gover nment" during a five year time-period and helped obtain thirty convictions. Specifically, he noted that Torres had tape-recorded up to sixty-five conversations, reviewed transcripts of those conversations, appeared before the grand jury on numerous occasions, and agreed to testify whenever asked to do so. Moreover, as a result of his extensive cooperation, Torres was threatened and his family suffer ed. Id. at 91-99.

The District Court granted the S 5K1.1 motion but, despite the presentations made by both the government and Torres's attorney, chose to depart downward only one month below the applicable twelve to eighteen month Guideline range, sentencing Torres to twelve months incarceration. The District Court enter ed its judgment of sentence on March 17, 2000, and this timely appeal followed.

II.

On appeal, Torres presents four ar guments. First, he contends that in determining the extent of his sentencing reduction for substantial assistance, the District Court

_____

1. The government, however, also noted that Torres's assistance was untimely in certain respects. For example, by the time Torres agreed to provide crucial assistance in the investigation of a Union City Police Department captain, he had died. Therefor e, the government concluded that "Torres's hesitance to pr ovide candid and complete cooperation at the outset resulted in useless delay and lost opportunities that are now impossible to calculate." J.A. at 77.

5

erred by failing to examine and weigh S 5K1.1's enumerated factors in a sufficiently thorough manner . Second, he argues that the District Court erred by announcing his sentencing reduction in terms of months rather than offense levels. Third, he contends that the sentencing judge misunderstood the proper legal standard for granting downward departures under S 5K1.1. Finally, he argues that the District Court erred by granting him too small a downward departure under S 5K1.1.

Torres's first three arguments allege sentencing errors based upon a mistake of law or an incorrect application of the Guidelines. Thus, we have appellate jurisdiction and review these claims under a plenary standar d. See United States v. Spiropoulos, 976 F.2d 155, 160 n.2 (3d Cir. 1992). In contrast, we lack jurisdiction to review the extent of a District Court's discretionary downward departure for substantial assistance to the government. See United States v. Parker, 902 F.2d 221, 222 (3d Cir . 1990).

A.

1.

Torres first argues that the District Court erred in determining the extent of a downward departure for his substantial assistance to the government by failing to conduct an adequate assessment of S 5K1.1'sfive enumerated factors. During oral argument, T orres conceded that the court considered each of the factors before announcing its ruling, but now argues that its examination was superficial, covering only the "basics." He contends that such a cursory analysis, with minimal articulation, fails under our standard, which requir es a qualitative, fact-specific assessment of a defendant's substantial assistance. Thus, he believes his sentence should be vacated.

Torres's first argument r equires us to examine the responsibility of a District Court judge when considering a S 5K1.1 motion for downward departur e based on substantial assistance. Our analysis begins withS 3553 of the Sentencing Reform Act, which describes the obligations

6

of the court when imposing a sentence under the
Guidelines. Section 3553(c) provides:

> (c) Statement of reasons for imposing sentence. The
> court, at the time of sentencing, shall state in open
> court the reasons for its imposition of the particular
> sentence, and if the sentence--
>
> (1) is of the kind, and within the range, described in
> subsection (a)(4) and that range exceeds 24 months,
> the reason for imposing a sentence at a particular
> point within the range; or
>
> (2) is not of the kind or is outside the range, described
> in subsection (a)(4), the specific reason for the
> imposition of a sentence different fr om that described.

18 U.S.C. S 3553(c).

Thus, under S 3553(c), a sentencing judge must explain
his or her reasons for imposing a particular sentence.
Further, when a sentence is outside the Guidelines range,
S 3553(c)(2) adds an additional obligation. It requires a
sentencing judge to justify explicitly his or her decision to
depart. Reducing a sentence under S 5K1.1 falls under
S 3553(c)(2)'s more stringent provision, because it permits a
sentencing judge to depart from the Guidelines range based
upon a defendant's substantial assistance.

Both the language of S 5K1.1 and its Backgr ound
Commentary reflect S 3553(c)'s command. In its 1999 form,[2]
S 5K1.1 provides:

> Upon motion of the government stating that the
> defendant has provided substantial assistance in the
> investigation or prosecution of another person who has
> committed an offense, the court may depart fr om the
> guidelines.
>
> (a) The appropriate reduction shall be determined by

---

2. Although the 1995 Guidelines applied to T orres's initial sentencing,
the 1999 Guidelines were in effect at time of his resentencing and, thus,
govern this appeal. See U.S. SENTENCING GUIDELINES MANUAL S 1B1.11
(1999) (dictating that the version of the Guidelines in effect at the time
of sentencing is to be used).

7

the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting fr om his assistance;

(5) the timeliness of the defendant's assistance.

U.S. SENTENCING GUIDELINES MANUAL S 5K1.1 (1999).

Similar to S 3553(c), subsection (a) of S 5K1.1 requires a sentencing judge to state his or her reasons for reducing a sentence. Section 5K1.1, however, extendsS 3553(c) and includes a list of relevant factors for measuring substantial assistance and determining the extent of a r eduction. Section 5K1.1, however, does not explicitly r equire the consideration of these factors. Instead, it pr ovides "[t]he appropriate reduction shall be deter mined by the court for reasons stated that may include, but are not limited to, consideration of the following." Id. (emphasis added). Thus, a sentencing judge is not confined to S 5K1.1's enumerated factors. However, it requires a sentencing judge to provide a specific statement explaining what factors he or she applied and the role these factors played in the sentencing determination.

Section 5K1.1's Background Commentary also r equires a District Court to state its reasons for departing from the Guidelines for substantial assistance. The Commentary provides that "[t]he nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis. Latitude is, therefore, affor ded the sentencing judge to reduce a sentence based upon the variable r elevant factors,

including those listed above." Id. at cmt. background. Citing to S 3553(c), the Commentary continues, "[t]he sentencing judge must, however, state the r easons for reducing a sentence under this section." Id. (emphasis added). Therefore, S 5K1.1's Background Commentary emphasizes the requirement that a District Court conduct an individual, fact-specific analysis when deter mining the extent of a defendant's substantial assistance. Mor eover, it highlights the District Court's obligation to communicate that analysis to the respective parties.

In addition to the Sentencing Reform Act and the Guidelines, our case law requires an individualized, qualitative analysis within and outside the context of S 5K1.1. For example, in United States v. Thompson, 483 F.2d 527 (3d Cir. 1973), a judge announced that he sentenced all those convicted of violations of Selective Service law to at least thirty months in jail no matter how "good they were." We held that it was impermissible for a sentencing judge to employ a personal "sentencing policy." We reasoned that "[a] fixed view as to sentencing is inconsistent with the discretion vested in the trial judge that he may fulfill his mandate to tailor the sentence imposed to the circumstances surrounding each individual defendant and frustrates the operation of those rules set up to effect such a result." Id. at 529. More recently, in United States v. King, 52 F.3d 589, 591 (3d Cir . 1995), we rejected a District Court's use of a mechanical "sentencing practice." We held that in making downward departur es under S 5K1.1, a District Court must undertake an individualized, case-by-case consideration of the extent and quality of a defendant's cooperation.

The First Circuit Court of Appeals has also examined the duty of a sentencing judge when considering a departure for substantial assistance under S 5K1.1. In United States v. Mariano, 983 F.2d 1150 (1st Cir. 1993), the appellants argued that the District Court had confused the legal principles governing departures underS 5K1.1 and S 5K2.0. The Court of Appeals agreed. In order to determine whether the District Court's error was harmless, it examined the proper standard under S 5K1.1. In so doing, the Court of Appeals initially noted that a district court has wide

9

discretion in deciding whether to depart under S 5K1.1. However, it held that S 5K1.1's r elevant factors "should be considered the mother lode of substantial assistance inquiries." Id. at 1156. As such, the court instructed that "[a] district court, faced with a section 5K1.1 motion, must at a bare minimum indicate its cognizance of these factors." Id. (emphasis added).

We agree with the approach taken in the First Circuit. Thus, we hold that when considering a departur e for substantial assistance, a sentencing court not only must conduct a qualitative, case-by-case analysis but also must examine S 5K1.1's enumerated factors. That is, when presented with a motion for downward departure a sentencing judge must, at the very minimum, indicate his or her consideration of S 5K1.1's five factors in determining whether and to what extent to grant a sentencing reduction. Further, a sentencing judge must indicate his or her consideration of any factors outside those listed in S 5K1.1. We strongly urge sentencing judges to make specific findings regarding each factor and articulate thoroughly whether and how they used any pr offered evidence to reach their decision. In sum, it is incumbent upon a sentencing judge not only to conduct an individualized examination of the defendant's substantial assistance, but also to acknowledge S 5K1.1's factors in his or her analysis.

This holding not only comports with the specificity requirements of S 5K1.1 but also r ecognizes the considerable responsibility of a sentencing judge. As we stated in United States v. Faulks, 201 F .3d 208, 213 (3d Cir. 2000), "the responsibility confr onting a district court judge when he or she sentences a convicted defendant is an awesome one." In that case, we held that in or der to ensure fairness, a judge must render a sentence in the defendant's presence. See id. We reasoned that it was not unlikely that a judge may enter court with an abstract attitude about the appropriate sentence, only to alter that mind-set when faced with a live human being in open court. Accor dingly, imposing a sentence merely by written judgment is forbidden. See id.

10

Requiring district courts to consider S 5K1.1's delineated factors similarly ensures that a sentencing judge is meeting his or her solemn duties in the most responsible way possible. Specifically, this requirement assures that a sentencing decision is made with solicitude, because it "encourages the judge to clarify and justify, in his own mind, the grounds for the sentence he chooses." United States v. Bazzano, 570 F.2d 1120, 1134 (3d Cir. 1977) (Adams, J., concurring). Hence, it ensures that a sentencing decision is made fairly. Of course, fair ness is enhanced as a sentencing judge's analysis incr eases in detail and thoroughness. This careful appr oach is essential where even minor differences in the length of a sentence of confinement can have an enormous impact on a defendant.

Moreover, justifying a sentencing decision by including a discussion of S 5K1.1's factors reinfor ces the dignity of the accused. It acknowledges that he or she is worthy of such an explanation. See id. at 1134. In many cases this requirement may be of "therapeutic worth to a defendant." Dorszynski v. United States, 418 U.S. 424, 456 (1974) (Marshall, J., concurring). Therefore, it serves an important function in the criminal justice system.

It is important to note, however, that our holding today in no way prevents a sentencing judge from considering factors beyond S 5K1.1's enumerated list. Such a holding would contravene both the very language of S 5K1.1 and our jurisprudence. Indeed, we encourage district courts to consider all relevant facts and factors in r eaching their decisions. The preface to S 5K1.1's enumerated list states that "[t]he appropriate reduction shall be determined by the court for reasons that may include, but ar e not limited to, consideration of the following . . . ." U.S. S ENTENCING GUIDELINES MANUAL S 5K1.1 (1999). In addition, S 5K1.1's Background Commentary provides that "[l]atitude is, therefore, afforded a sentencing judge to reduce a sentence based upon variable relevant factors, including those listed above." Id. at cmt. background. Consistent with this language, in United States v. Casiano, 113 F .3d 420, 428 (3d Cir. 1997), we stated that "the bases for substantial assistance departures are not meant to be exhaustive, they are instructive." Thus, we held that a district court's

11

consideration of the "seriousness of the crime" and the "impact on the victim" in determining the extent of a departure under S 5K1.1 was well within its discretion. See id. at 431.

Other Courts of Appeals have similarly interpr eted S 5K1.1. For example, in United States v. Carnes, 945 F.2d 1013, 1014 (8th Cir. 1991), the Eighth Cir cuit Court of Appeals held that a district could weigh the assistance rendered by the defendant, convicted inter alia of using a firearm during a drug trafficking of fense, against the benefit he received from the prosecution's decision not to charge him with the use of additional weapons. Additionally, in United States v. Mittelstadt , 969 F.2d 335, 336–37 (7th Cir. 1992), the Seventh Cir cuit Court of Appeals held that a district court did not err in considering a defendant's chronic alcoholism in making aS 5K1.1 determination. See also United States v. Luiz, 102 F.3d 466 (11th Cir. 1996) (per curiam) (holding that a district court's comparison of a defendant's conduct to that of co-defendants to determine the extent of a sentencing reduction for substantial assistance was not a misapplication of S 5K1.1); United States v. Alvarez, 51 F.3d 36, 41 (5th Cir. 1995) ("[T]he decision as to the extent of the departure is committed to the almost complete discretion of the district court, which may consider factors beyond the narrower set that could independently support a departure in the first instance."); Mariano, 983 F.2d at 1156–57 ("Even if the five factors enumerated in section 5K1.1 weigh in a defendant's favor, the district court may, on the basis of other considerations . . . decide to forego or curtail a downward departure for substantial assistance.").

Applying this standard to the present case, we conclude that the District Court, although marginally, met its burden under S 5K1.1. The transcripts of the sentencing hearing reveal that the Court heard and consider ed arguments that covered each factor enumerated in the Guidelines, and apparently read the government's letter. Although the Court failed to articulate the details of Torr es's substantial assistance when announcing its ruling, we ar e satisfied that it weighed S 5K1.1's factors nonetheless. Specifically, the Court stated, "[t]he motion for S 5K1.1 is granted. It's

barely granted, but we will grant it because of the effusive recommendation for such being made by the United States Attorney arising out of what appeared to be a successful investigation and prosecution of law enfor cement officers . . . ." J.A. at 99. Therefore, the court indicated its awareness of Torres's assistance in relation to the S 5K1.1 factors.3

The transcript also reveals that the District Court balanced the seriousness of Torres's of fense against his substantial efforts to assist the gover nment's investigation. The Court stated:

> We have heard what he has said. W e have heard what his attorney has said with regard to this apparent rehabilitation of Mr. Torr es. However, it remains that Mr. Torres, nevertheless, committed a serious crime in 1991 and for that he should be punished.
>
> Now, the extent of punishment can readily be tempered by the grant, which I do, of the motion 5K1.1. But, I'm not placing him on probation because what he did cannot just be forgotten or erased or made to disappear because of the subsequent cooperation with the Government, nevertheless, even though, according to the Government, it was fruitful.

Id. at 99-100. As we indicated earlier , this sort of balancing is entirely proper and well within a district court's discretion.

Although we conclude that the District Court's consideration of the S 5K1.1 factors is adequate, we cannot help but observe that it is minimally so. As noted above, 18 U.S.C. S 3553(c), U.S.S.G. S 5K1.1, and the background commentary and case law interpreting them, impose a weighty obligation on a sentencing judge to articulate the reasons for a particular downward departur e. This obligation assumes even greater vitality in situations, like

_____

3. We note, however, that in the absence of the oral colloquy immediately prior to the District Court's ruling, the District Court's remarks would fall well short of our requirement that a sentencing judge weigh and discuss S 5K1.1's factors when presented with a motion for substantial assistance.

Torres's, where the magnitude of the departure and the extent of the cooperation may, at first blush, appear incongruous. The District Court chose to depart downward by only one month from the twelve to eighteen month Guideline range applicable to Torres, in spite of the government's letter brief forcefully commending his cooperation, which during its five-year duration ultimately helped to net thirty criminal convictions, and in spite of Torres's attorney's description of the threats Torres and his family suffered as a consequence of his assistance. Section 5K1.1 indicates that a court should account, inter alia, for "the nature and extent of the defendant's assistance," "the timeliness of the defendant's assistance," and"the government's evaluation of the assistance r endered" in making its departure decision, and should articulate the ways in which it considered those factors. Although we conclude that, in Torres's case, the District Court's consideration was minimally sufficient, we also stress that a sentencing court would be best served by car efully reciting on the record the factors it evaluated in arriving at its S 5K1.1 departure decision, and the manner in which it weighed those factors.

2.

Torres further argues that the District Court employed a "sentencing practice." In support, he points to the following comments by the District Court:

> How much should be given for one who admittedly is a criminal? How much consideration does the Government want me to give to one who is admittedly a criminal?
>
> . . . .
>
> You see the thing is, you have to for give me, I'm somewhat cynical after all these years of epiphanies that people obtain and have after they have been found guilty of a crime.

J.A. at 87-88.

Like Torres, we are troubled by these remarks. They appear to evidence a bias against rewar ding defendants for

14

substantial assistance under S 5K1.1, and convey misgivings about defendants' cooperation, irr espective of the nature and degree of their assistance. Every party to every court proceeding has the right to an impartial determination of his or her rights. Cynicism, even if self-confessed, has no place in the courtroom.

The District Court's statement, moreover , is wrong. The very purpose of a S 5K1.1 motion is to lower the sentence of "one who is admittedly a criminal." Congr ess specifically directed the Sentencing Commission to

> assure that the guidelines reflect the general appropriateness of imposing a lower sentence  than would otherwise be imposed . . . to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

28 U.S.C. S 994(n) (1998) (emphasis added). Thus, Congress has deemed a convicted defendant's meaningful assistance in the administration of justice between appr ehension and sentencing worthy of an adjustment in his or her sentence. Section 5K1.1 of the Guidelines reflects this judgment.

Accordingly, the fact that a defendant "is admittedly a criminal" has no bearing on whether a S 5K1.1 motion is granted or denied. We must remember that at this point in the proceedings (sentencing), all defendants are criminals. A sentencing judge's own aversion to lowering the sentence of a convicted defendant for substantial assistance is simply irrelevant. Like it or not, the Guidelines not only permit a defendant's assistance in the investigation or prosecution of another person who has committed an offense, but encourage it. It is the obligation of a sentencing court to apply S 5K1.1 with this in mind. W e believe the District Court came perilously close to violating this obligation.

Despite these comments, however, we ar e convinced that the District Court's decision relied upon valid grounds rather than its personal predilections. W e find no error because the Court considered the factors enumerated in S 5K1.1 as well as other relevant cir cumstances. Indeed, at no point did the sentencing judge state that it was"his

15

practice" to depart downward one month for substantial assistance. Cf. King, 53 F.3d at 590-91. Rather, he weighed the seriousness of Torres's offense against the government's detailed presentation of his conduct in r elation to S 5K1.1. This examination and discussion belies Torr es's contention that the sentencing judge employed a sentencing practice, rather than engaging in a qualitative, case-by-case analysis. Accordingly, we find no error with the District Court's analysis or enunciation of its basis for granting T orres a one month reduction in his sentence for substantial assistance to the government in its investigation of an illegal gambling enterprise.

B.

Torres also argues that the District Court improperly applied the Guidelines when it announced the extent of his departure in terms of months rather than offense levels. Further, he argues that the District Court misunderstood the legal standard for imparting a sentencing r eduction under S 5K1.1 and thus applied it impr operly and in violation of the law. We reject both of these arguments.

With respect to Torres's contention that the District Court committed a legal error by not announcing its sentencing reduction in terms of of fense levels, neither the Sentencing Reform Act nor the Guidelines contain such a requirement. Here, the District Court reduced Torres's sentence by one month. Under the Sentencing Guidelines, a departure measured in months is easily translated into offense levels. See U.S. SENTENCING GUIDELINES MANUAL ch. 3, pt. A (1999). Accordingly, the District Court's failure to announce Torres's reduction in ter ms of offense levels was not a legal error.

Torres also argues that the District Court misunderstood the legal standard for imposing a S 5K1.1 downward departure for substantial assistance and thus imposed the standard in violation of the law. Torr es bases this argument on a single statement by the District Court at sentencing. Specifically, he focuses on the statement, "[a]nd that explains to you, Mr. Torres, why I believe you should be sentenced to jail and I do sentence you to jail because we

16

have granted you a departure." J.A. at 100 (emphasis added). Torres argues that this statement reflects the District Court's erroneous belief that it was r equired to sentence him to jail because it granted him a downward departure under S 5K1.1.

When read in its entirety, the recor d of the sentencing hearing provides adequate assurance that the sentencing judge properly understood his authority underS 5K1.1, and recognized he could sentence Torr es to probation rather than jail. For example, prior to the statement at issue, the sentencing judge stated: "[n]ow the extent of the punishment can readily be tempered by the grant, which I do, of the motion 5K1.1. But I am not placing him on probation. By no stretch of the imagination am I placing him on probation because what he did cannot just be forgotten . . . because of subsequent cooperation with the Government . . . ." Id. at 100. These remarks make clear that the court was fully aware of its legal authority to impose a probationary sentence, but declined to do so because of the seriousness of Torres's of fense. This decision was within the discretion of the District Court and did not constitute error. As such, Torr es's argument fails.

C.

Finally, Torres argues that the District Court erred by not granting him a more significant downwar d departure. While we surely appreciate the reason for this grievance, we do not, however, have appellate jurisdiction with respect to this issue.

A defendant may only appeal his sentence if it (1) was imposed in violation of law, (2) was imposed as a r esult of an incorrect application of the Guidelines, (3) is greater than that specified in the applicable Guideline range, or (4) was imposed when there is no applicable guideline and is plainly unreasonable. 18 U.S.C. S 3742(a). Thus, where the sentence was lawfully imposed and is within the applicable Guideline range, we lack jurisdiction to review the sentence. See United States v. Graham, 72 F .3d 352, 358 n.8 (3d Cir. 1995).

17

Here, Torres's challenge does not raise any of the above bases for appealing his sentence. Rather, he is merely attacking the extent of a lawfully imposed sentence. Accordingly, we are without jurisdiction to review this issue.

III.

In summary, we hold that in determining the extent of a downward departure for substantial assistance, a sentencing judge must not only conduct a qualitative, fact-specific analysis but also must expressly indicate its recognition of S 5K1.1's factors. W e hold that the District Court minimally satisfied this standard by considering the government's extensive presentation of T orres's substantial assistance, which addressed each of S 5K1.1's five factors. Torres's additional allegations of err or are without merit, and we are without jurisdiction to review the District Court's decision to depart by only one month. Accor dingly, we affirm.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

18