**John Anthony Bigiarelli, Jr., Appellant.**

Nos. 01–3035, 01–3036, 01–3037.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) March 1, 2002.

Opinion Filed March 28, 2002.

**UNITED STATES of America,**

**v.**

**Bruce ALBRIGHT, Appellant.**

**United States of America,**

**v.**

**Mark Ortega a/k/a Mark Peterson, Appellant.**

Before ROTH and FUENTES, Circuit Judges and KATZ,* District Judge.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

In this consolidated appeal, the three co-defendants challenge aspects of their sentencing. After carefully considering the appellants' arguments, we conclude that they all lack merit. We will affirm the judgment of the District Court in each case. The defendants pled guilty to criminal charges arising from participation in a conspiracy to steal cash, stock certificates, bond certificates, certificates of deposit, jewelry, and other property from a safe in a Mercersburg, Pennsylvania apartment owned by Frank M. Linninger. Linninger rented the apartment to a co-conspirator, Jeremiah Chambers, and his girlfriend. In March 2000, Chambers stole some cash from the safe, and used the money to buy a car in West Virginia. Chambers told Appellant, Bruce Albright, Chambers's cousin, about the valuable property remaining in the safe. Later that month, Chambers arranged to leave the apart-

ment door unlocked. Albright and three other defendants traveled from West Virginia, entered the apartment, and pushed the safe into their car. Because the heavy safe made driving difficult, they left the safe in a deserted area and drove to the residence of Appellant, John Anthony Bigiarelli, Jr., in West Virginia. Bigiarelli took his truck with three others to retrieve the safe and bring it back to his house. Appellant, Mark Ortega, agreed to use his tools to help cut open the safe. After the contents were removed, other co-conspirators later dumped the safe in a field. Bigiarelli and several other co-conspirators were paid money from the safe for their efforts, and Albright and his three principal co-conspirators split the bulk of the safe's contents.

Albright voluntarily surrendered to the Pennsylvania State Police and gave a statement concerning his role in the theft and the actions of others, including the fact that Chambers used some money from the safe to purchase a car. Ortega and Bigiarelli also gave statements to the police following their arrests.

On November 8, 2000, the three appellants and four others were indicted on one count of conspiracy to commit interstate transportation of stolen property in violation of 18 U.S.C. §§ 371 and 2, and one count of interstate transportation of stolen property in violation of 18 U.S.C. § 2314. Three co-conspirators pled guilty and have not appealed their sentence. The indictment against Chambers was dismissed because the Government failed to amass sufficient evidence against him. Under plea agreements, Albright and Ortega each pled guilty to the conspiracy count, and Bigiarelli pled guilty to the interstate transportation count.

The District Court had jurisdiction over these criminal matters under 18 U.S.C.

* Honorable Marvin Katz, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

§ 3231, and we have jurisdiction over the final orders of conviction and sentence under 28 U.S.C. § 1291. We exercise plenary review over the District Court's legal interpretation of the Sentencing Guidelines. *United States v. Torres*, 251 F.3d 138, 145 (3d Cir.2001). However, if the District Court did not make a mistake of law, we lack jurisdiction to review the court's exercise of discretion to deny a downward departure. *Id.* We address the arguments of each appellant in turn.

## I. Albright

▪ Prior to Albright's sentencing, the Government filed a motion for a downward departure under U.S.S.G. § 5K1.1 based on Albright's substantial assistance to the Government. The Government recommended a two month departure. On July 18, 2001, the District Court rejected the Government's request and held that "the nature and significance of the cooperation was [not] that great that it should warrant a downward departure." App. at 73. Albright was sentenced to 18 months imprisonment and two years supervised release, and was ordered to pay $212,000 in joint and several restitution with the other defendants.

Albright argues that the District Court erred in its application of § 5K1.1 by adopting a per se rule that a defendant had to offer information of "major significance" to qualify for a departure, and by confusing "substantial assistance" under § 5K.1.1 with the "acceptance of responsibility" standard under U.S.S.G. § 3E1.1. He also argues that the court misinterpreted our decision in Torres, in which we explained the requirements for a sentencing court in considering a departure under § 5K1.1.

In Torres, we "urge[d] sentencing judges to make specific findings regarding each factor" enumerated under § 5K1.1[1]

and required an "individualized determination" of the defendant's substantial assistance, but we did not limit a court's discretion to assign different weights to each of the factors and balance them accordingly. See *Torres*, 251 F.3d at 148. We have reviewed the transcript of Albright's sentencing, and we conclude that the court properly considered each of the relevant factors and determined, in its discretion, that Albright's assistance was not of sufficient significance to warrant any departure. The court did not rule as a matter of law that the lack of "major significance" of a defendant's information automatically disqualifies a defendant from receiving a downward departure. The court instead focused on the particular facts of Albright's case, particularly the other sentencing adjustments granted to Albright and the nature of Albright's cooperation.

Further, the court followed the suggestion of § 5K1.1's application notes by considering substantial assistance independently from acceptance of responsibility, and by requiring more than mere acceptance of responsibility to justify a departure under § 5K1.1. See U.S.S.G. § 5K1.1, cmt. n. 2. The court therefore did not confuse the two inquiries. The court did not err in its legal interpretation of the Guidelines. We have no jurisdiction to review the court's exercise of discretion to deny the downward departure. Therefore, we will affirm the judgment of sentence for Albright.

## II. Bigiarelli

Bigiarelli raises a similar challenge to the District Court's denial of a downward departure under § 5K1.1. As in Albright's case, the Government filed a motion rec-

---

1. These factors include: 1) the court's evaluation of the significance and usefullness of the defendant's assistance; 2) the truthfulness, completeness, and reliability of the information provided by the defendant; 3) the nature and extent of the defendant's assistance; 4) any injury suffered, or risk of injury, to the defendant or his family resulting from the assistance; and 5) the timeliness of the defendant's assistance. U.S.S.G. § 5K1.1.

ommending a downward departure for substantial assistance, and the court denied the motion at Bigiarelli's sentencing on July 18, 2001. Bigiarelli was sentenced to 21 months imprisonment and 2 years supervised release, and was fined $212,000 in joint and several restitution with the other defendants.

Bigiarelli argues that his case should be remanded because the District Court might have been under the "mistaken impression" that it did not have the legal authority to grant the downward departure. He contends that the court might have thought that analysis of the five § 5K1.1 factors were prerequisites to the exercise of its departure authority, rather than simply considerations in the exercise of its discretion. This argument lacks merit. The sentencing hearing transcript reveals that the court knew it could act, because the court considered each of the § 5K1.1 factors, and concluded that "the nature and significance of the cooperation this Court doesn't feel is sufficient to warrant a downward departure." App. at 52 (emphasis added). This statement makes clear that the court's ruling was a knowing exercise of its discretion. The court did not commit legal error, and we have no jurisdiction to review the court's exercise of its discretion. We will affirm the judgment of sentence for Bigiarelli.

### III. Ortega

■ Ortega was sentenced on July 17, 2001 to 18 months imprisonment and two years supervised release, and was charged $212,000 in joint and several restitution. The court determined the guideline level for Ortega by valuing the victim's loss at $1.5 million, but the victim reported a loss of only $212,100. Ortega first argues that in calculating the value of the victim's loss under U.S.S.G. § 2B1.1(b)(1)(N), the District Court improperly included the face value of the stock certificates, bond certificates, and certificates of deposit stolen from the safe, even though the certificates alone are worthless and do not confer ownership.

This Court has held that the amount of loss under § 2B1.1 should be determined by the face value of a check or bond, not by its "market" or "street" value. *United States v. Stuart*, 22 F.3d 76, 82 (3d Cir. 1994) (citing *United States v. Cianscewski*, 894 F.2d 74, 80 (3d Cir.1990)). Although Stuart did not specifically involve stock certificates, the Eleventh Circuit has held that the face value of stock certificates may properly serve as the basis for the loss calculation. *United States v. Jenkins*, 901 F.2d 1075, 1083–84 (11th Cir.1990). We see no reason why Stuart does not apply to the analogous facts here, and our reasoning in Stuart is nearly identical to the Eleventh Circuit's in Jenkins. The fact that Ortega proffered expert testimony that stock certificates have no value is irrelevant in light of Stuart.

Finally, Ortega claims that the court wrongly denied him a downward departure for acceptance of responsibility under U.S.S.G. § 3E1.1 because Ortega used illegal drugs while released on bail post-indictment and before sentencing. He contends that his drug use was unrelated to the crimes charged and did not alter the fact that he manifested acceptance of responsibility through his statements to and cooperation with the police.

■ He also alleges that the court should have considered other factors in addition to his drug use and that the court improperly disqualified him from receiving a departure solely because of his drug use. "A district court's factual determination of whether the defendant is entitled to an acceptance of responsibility reduction in his sentence is reviewed on a clearly erroneous standard." *United States v. Ceccarani*, 98 F.3d 126, 129 (3d Cir.1996).

In *Ceccarani*, we held that a sentencing court, in deciding whether to grant a

downward departure under § 3E1.1, may properly consider criminal conduct unrelated to the charged crimes and committed post-indictment while the defendant is free on bail. *Id.* at 129–30. Even if we view Ortega's drug use as unrelated to the charges against him, *Ceccarani* makes clear that the court may exercise its discretion to deny a downward adjustment for acceptance of responsibility for a defendant who tested positive for drugs while on bail and thus violated his conditions of release. See *id.* at 130–31. Although in *Ceccarani*, the defendant also refused to enter a drug treatment program, we cited approvingly several cases from our sister circuits which found no error in denials of downward departures on the basis of drug use alone. See *id.* at 129.

Further, the sentencing hearing transcript reveals the court did not consider Ortega's drug use a per se bar against downward departure, but that it assessed other factors and made its decision on the facts of this case. We cannot say that the court's factual determination was clearly erroneous. We will affirm the judgment of sentence for Ortega.

### IV.

For the foregoing reasons, we will AFFIRM the judgments of conviction and sentence for all three appellants in this case.