

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-12-2002

# USA v. Eisenhart

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-2685

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Eisenhart" (2002). *2002 Decisions.* Paper 490.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/490

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-2685
_____

UNITED STATES OF AMERICA

v.

SCOTT ALAN EISENHART,
Appellant.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Criminal No. 1:CR-99-154
District Judge:  Hon. Sylvia H. Rambo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 20, 2001
Before: SLOVITER and McKEE, Circuit Judges, and DEBEVOISE District Judge.

(Opinion Filed: August 21, 2002)
_____

OPINION OF THE COURT
_____

McKEE, Circuit Judge.

     Scott Eisenhart appeals the judgment of conviction and sentence that the district
court entered following his guilty plea to one count of bank fraud in violation of 18
U.S.C.  1344.  Eisenhart contends that the district court erred in: (1) miscalculating the
amount of loss under the Guidelines; (2) finding that his offenses caused the insolvency
of the financial institution; (3) finding that his plea was knowing and intelligent; (4)
quashing a subpoena that he issued in an attempt to get information from the Credit
Union; and (5) in not granting a larger downward departure from the proscribed
Guidelines range. For the reasons that follow, we will affirm.
                                        I.
Inasmuch as we are writing only for the parties and the district court, we need not
set forth the factual or procedural background of this matter except as may be helpful to
our brief discussion.
     Eisenhart's first contention is that the district court erred in calculating the amount
of loss under the Guidelines. The district court determined that the amount of loss was
the loss at the time of the discovery of Eisenhart's fraud in September 1996;
$378,661.19.  (App. 144A.)  Accordingly, pursuant to  2F1.1 (2000) of the applicable
Sentencing Guidelines,  the district court determined that Eisenhart's initial offense level
was fifteen.  Eisenhart argues that the district court should have credited the $125,000
that his mother repaid as she was a guarantor on one of the fraudulently obtained loans.
That payment, if credited, would have reduced the loss to $253,661.19, and would have
reduced the offense level to fourteen.
     Application Note 8(b) to  2F1.1 provides in relevant part:
     In fraudulent loan application cases . . .  the loss is the actual loss to the
     victim . . . .  For example, if defendant fraudulently obtains a loan by
     misrepresenting the value of his assets, the loss is the amount of the loan

> not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan.

U.S.S.G.  2F1.1 App. Note 8(b) (emphasis added).

Here, Eisenhart seeks to benefit from his mother's repayment of some of the funds he fraudulently obtained.  The payment was made after he entered a plea agreement, but prior to sentencing.  In essence, he is attempting to allow his mother to purchase a lower sentence by relying on her conduct as guarantor.  However, the money Eisenhart's mother paid was not collateral securing the loan.  Moreover, the money was not repaid until several years after the loss was discovered.  Accordingly, the district court correctly held that the payment did not diminish the bank's loss for sentencing purposes because it did not effect the amount of the loss at the time Eisenhart's crime was discovered.  See U.S.S.G.  2F1.1 App. Note 8(b).

Moreover, we have held that a defendant should not be permitted to barter for a lower sentence by offering to make restitution after being caught.  See United States v. Shaffer, 35 F.3d 110, 115 (3d. Cir. 1994).  Consequently, restitution payments that are tendered after a fraud is detected ordinarily do not reduce the applicable offense level.  Id.  Similarly, a defendant cannot rely on post-detection restitution efforts by a culpable third party to reduce the loss for sentencing purposes.  See United States v. Mummert, 34 F.2d 201, 204 (3d Cir. 1994).  Although Eisenhart's mother is not a culpable third party, we believe that these principles nonetheless counsel against allowing her payments to mitigate Eisenhart's loss calculation or offense level.  Eisenhart's argument to the contrary rests in large part upon our holding in United States v. Kopp, 951 F.2d 521 (3d Cir. 1991).  However, Eisenhart's reliance on Kopp is misplaced.

Kopp concerned a collateralized loan fraud in which the defendant pledged his own assets to secure a victimized bank against loss.  We had to determine if the relevant loss under the Guidelines was the entire amount of the fraudulently obtained loan or the actual amount of loss.  The latter measure factored in the value of the collateral as that would have reduced the amount of the bank's loss.  We did conclude that the collateral reduced the amount of the loss. However, in reaching that conclusion, we also noted that "the loss amount should be revised upward to account for the loss the defendant intended to inflict if that intended loss is higher than the actual loss figure."  951 F.2d at 535–536 (emphasis supplied).  We then remanded to the district court for a determination of the actual and potential loss.  Id. at 536.

We did note parenthetically that the amount of actual loss should be calculated at the time of sentencing.  Id. at 535.  However, that was certainly not our holding, and that observation is inconsistent with the result we reached in Kopp insofar as the circumstances of Eisenhart's loss calculation are concerned.  In Kopp we concluded that the intended loss may be greater than the outstanding loss at sentencing and that this greater figure may constitute the appropriate loss under the Guidelines.  Id.  Here, Eisenhart's mother's payment clearly was not relevant to determining the amount of the intended loss absent evidence to the contrary; and there is no such evidence on this record.  The district court apparently was not convinced that Eisenhart intended for his mother to repay the bank when he executed the fraudulent documents, and neither are we.

We therefore hold that the district court properly relied upon the actual amount of the loans outstanding at the time the fraud was discovered, September 1996, to determine the amount of loss under the Sentencing Guidelines.

## II.

Eisenhart next contends that the district court erred in determining that his conduct substantially jeopardized the safety and soundness of a financial institution and thus increasing the offense level from seventeen to twenty-four pursuant to U.S.S.G. 2F1.1(b)(7)(A).  In reaching this determination, the district court considered the testimony of National Credit Union Administration analyst Robert McCausin.  Eisenhart's assertion of error in this regard is based upon an alleged error in McCausin's testimony.  Eisenhart contends that the loan his mother repaid should not have been included in the calculation of the total loans attributable to his fraud.  Eisenhart argues that had the repayment been credited in the calculation, the insolvency

ratio used to determine whether the Credit Union was insolvent would have been reduced to 103% and thus there was no insolvency.

However, McCausin's uncontroverted testimony did demonstrate that Eisenhart's fraud jeopardized the soundness of the Credit Union. (App. 103A, 107A.) The record also demonstrates that by September 1996, after the fraud had been discovered, the net value of the Credit Union's assets was less than the total value of its members' shares. The record supports the conclusion that that insolvency was attributable to loans Eisenhart fraudulently obtained, and that those loans played a significant part in the Credit Union losing its capital reserves and having a negative capital. (App. 100A-102A.). (App. 102A-103A.) The Credit Union's situation was so precarious that it considered a forced merger or closure. (App. 105A-106A.). Inasmuch as Eisenhart's mother's belated payment does not mitigate these uncontested facts, we cannot say that the district court's finding that Eisenhart's fraud placed the Credit Union in substantial danger of insolvency was clearly erroneous.

### III.

Eisenhart argues that his guilty plea was not a knowing, intelligent and voluntary plea and should be withdrawn because the district court applied a seven point enhancement to his offense level even though his plea agreement stipulated that the government would only recommend a four point enhancement under U.S.S.G. 2F1.1(b)(7).

However, Eisenhart's Rule 11 colloquy clearly demonstrates that he understood that he faced a maximum prison sentence of thirty years as a result of his guilty plea. Furthermore, despite his current assertion to the contrary, he stated under oath that he understood that the government's sentencing recommendation was not binding on the court. We therefore hold that his claim that he should be allowed to withdraw his plea because the court rejected the government's recommended enhancement is meritless.

Moreover, it is well settled that the government's erroneous estimate of a defendant's likely sentence does not provide grounds to vacate a guilty plea. See, e.g., United States v. Oyegbola, 961 F.2d 11, 14-15 (1st Cir. 1992). "To deter abuses in the withdrawal of guilty pleas under [Rule] 32(d) [of the Federal Rules of Criminal Procedure], and to protect the integrity of the judicial process . . . 'rational conduct requires that voluntary responses made by a defendant under oath [when entering a guilty plea] . . . be binding.'" United States v. Scott, 929 F.2d 313, 315 (7th Cir. 1991).

### IV.

Eisenhart contends that he was denied due process and could not prepare an adequate defense at his sentencing hearing because the district court quashed his subpoena for certain Credit Union reports ranging back to 1993. The district court determined that the requested documents were not relevant to the sentencing inquiry and that the subpoena raised issues of privacy.

Decisions regarding the quashing or modification of Rule 17 subpoenas are committed to the district court's discretion. United States v. Cuthbertson, 630 F.2d 139,145 (3d Cir. 1980). Thus, absent an abuse of discretion, we will not disturb the district court's exercise of its discretion on appeal. In order to sustain the validity of a trial subpoena, the defendant "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." United States v. Nixon, 418 U.S. 683, 700 (1974). Furthermore, it is well settled that trial subpoenas may not be used merely as a means for obtaining discovery in criminal cases. Id. at 698. Indeed, "courts must be careful that [a] Rule 17(c) [subpoena] is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16." Cuthbertson, 630 F.2d at 146. Thus, although a defendant's subpoena may be motivated only by the venerable principle of "nothing ventured, nothing gained," more is needed to sustain a subpoena than the defendant's own subjective belief (i.e. hope) that he or she may find something useful by casting a subpoena upon the waters. Id.

The district court concluded that the subpoena was not aimed at relevant information, and that it raised sensitive privacy issues for other members of the Credit Union. Eisenhart was given the opportunity to conduct discovery in the fifteen months prior to his sentencing, yet he was neither able to identify relevant evidence to be subpoenaed, nor provide a sufficient foundation to allow the district court to conclude that the Credit Union subpoena targeted relevant evidence. Accordingly, we cannot say that the district court abused its discretion in quashing it.

V.

Finally, Eisenhart contends that the district court failed to give him an adequate downward departure for his substantial assistance pursuant to U.S.S.G. 5K1.1. He also contends that the district court failed to adequately explain the grounds for its decision.

Eisenhart contends that the district court ignored the totality of his assistance in determining the extent it was willing to depart under the Guidelines. He argues that, though the district court acknowledged his assistance in relation to the Credit Union, it did not acknowledge his substantial assistance in the investigation of unrelated matters. This, argues Eisenhart, resulted in the district court's failure to properly apply 5K1.1.

A district court must consider the factors listed in U.S.S.G. 5K1.1 in determining whether a downward departure for substantial assistance is merited. United States v. Torres, 251 F.3d 138, 151-52 (3d Cir. 2001). We may review whether the district court adequately explained its grounds for granting a downward departure for substantial assistance. Id.

Our review of the record establishes that the district court considered the relevant 5K1.1 factors as well as our decision in Torres. The district court acknowledged and credited the cooperation Eisenhart provided with regard to the Credit Union. The district court also noted the cooperation Eisenhart provided to law enforcement concerning other, unrelated matters. However, the court did not afford the latter cooperation great significance because of its questionable reliability. (App. 145A.).

Therefore, to the extent Eisenhart is arguing that the court's explanation was inadequate under Torres, we reject his claim. To the extent he is arguing that the district court improperly exercised its discretion in granting a downward departure, we lack jurisdiction to review his claim. Torres, 251 F.3d at 151-52; United States v. Denardi, 892 F.2d 269, 272 (3d Cir. 1989) ("This court does not have jurisdiction over an appeal of a district court's exercise of discretion whether, or by how much, to grant a downward departure.")

VI.

Accordingly, for the foregoing reasons, we will affirm the judgment of conviction and sentence in this case.

_____

TO THE CLERK:

Please file the foregoing not precedential opinion.

By the Court:

/s/ Theodore A. McKee
Circuit Judge