UNITED STATES of America

v.

Ralph NATALE, Appellant.

No. 05–1303.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Dec. 14, 2007.

Filed: Jan. 3, 2008.

George S. Leone, David B. Lat, Office of United States Attorney, Newark, NJ, for United States of America.

Marc Neff, Philadelphia, PA, for Appellant.

Before: SLOVITER and AMBRO, Circuit Judges POLLAK,* District Judge.

* Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## OPINION

POLLAK, District Judge.

Defendant-appellant Ralph Natale appeals the sentence imposed by the District Court. We will affirm.

### I.

Because we write primarily for the parties, we set forth only the essential facts. Natale has been associated for decades with the Philadelphia branch of La Cosa Nostra ("LCN"), a criminal organization. Between 1978 and 1982, Natale was convicted of numerous crimes, including RICO, mail fraud, conspiracy, and various drug offenses. Natale was released on parole in 1994. In 1998, Natale was arrested for violating his federal parole. While in custody on that violation, Natale was indicted in the District of New Jersey for a conspiracy to distribute methamphetamine. In 1999, he signed a plea agreement, under the terms of which he would plead guilty to four offenses in exchange for, *inter alia*, the government's agreement not to bring further charges against him arising out of his involvement with LCN. The four offenses were: (1) a RICO conspiracy, *see* 18 U.S.C. § 1962(d), for which the predicate acts of racketeering included seven murders, five attempted murders, extortion, manufacturing and distributing methamphetamine, arson, and bribery; (2) corrupt payments to public officials, *see id.* § 666(a)(2); (3) murder in aid of racketeering activity, *id.* § 1959(a)(1); and (4) conspiracy to distribute methamphetamine, *see* 21 U.S.C. § § 841(a)(1), 846. On May 5, 2000, Natale pled guilty to these offenses.

Natale was not sentenced until January 21, 2005. In the interim, Natale was, according to the government, "the first boss of an LCN family to cooperate in the history of the United States." He gave truthful, complete, and reliable information on the activities of the Philadelphia LCN, including eight previously unsolved murders and Natale's bribery of the mayor and city council president of Camden. He gave lengthy testimony as the chief government witness in four trials, and his cooperation led to cooperation by four other LCN associates. Calling Natale's cooperation "extraordinary," the government at sentencing stated that Natale "significantly contributed to the dismantling of the Philadelphia LCN"; "greatly assisted the United States in addressing the public corruption problem that existed in Camden"; and provided information valuable not only to law enforcement in Philadelphia and New Jersey, but also to other federal and state law enforcement agencies.

The Sentencing Guidelines range calculated by the probation office was not challenged by Natale at sentencing and was accepted by the District Court. Natale's base offense level for the RICO conspiracy was 43, and his underlying racketeering activities far exceeded the threshold under the grouping rules to qualify him for the maximum five-level increase, to 48. Subtracting three levels for acceptance of responsibility yielded the final offense level of 45. That offense level is two levels higher than the highest level on the sentencing table, and Natale was in the highest criminal history category, category VI. The Guidelines range was therefore life imprisonment.

The District Court granted the government's motion for a downward departure under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). The court then heard testimony from an FBI special agent, a murder victim's daughter, and Natale himself, and heard lengthy presentations from defense counsel and the government. The government requested "a substantial departure." Following a lengthy discussion of the com-

peting considerations arising from Natale's horrific crimes and unprecedented cooperation, the District Court departed downward 17 levels, from 45 to 28, resulting in a range of 140 to 175 months. The court then sentenced Natale to concurrent sentences of 120, 156, 156, and 156 months for the four offenses. The court noted that Natale would receive credit for five years he had already served.

## II.

■ We must reject Natale's various claims of error.[1] First, the record belies Natale's contention that "it is clear that the sentencing court was predisposed against defendants ... who, like the Appellant, have cooperated with the government." The District Court discussed the "strong public policy" favoring cooperation, stated that cooperation should be "an important factor" in sentencing, and then, after discussing at length the extent of Natale's cooperation as well as competing considerations, granted Natale a 17–level departure based on his cooperation. The District Court's comments regarding the factors weighing against downward departure—the seriousness of Natale's offenses and the need for deterrence—were entirely appropriate. *See United States v. Torres*, 251 F.3d 138, 149 (3d Cir.2001).

■ Second, Natale contends that the District Court failed to consider Natale's case on its own merits, citing *United States v. King*, 53 F.3d 589 (3d Cir.1995). In *King*, we vacated a sentence where the district court stated it would depart downward by three levels for cooperation, as was the court's "practice." *Id.* at 590. Nothing in the record supports Natale's contention that his sentencing involved any such mechanical method. To the contrary, the District Court indicated that the court had never before departed downward by 15 levels, let alone 17 levels.

■ Third, Natale contends that the District Court failed to give "sufficient individual consideration to the factors enumerated in U.S.S.G. § 5K1.1." This claim is flatly contradicted by the record: The District Court methodically addressed each of the five factors and then concluded that Natale's cooperation "satisfied [the *Torres* factors] to a greater degree than almost any I've seen." We lack jurisdiction to review Natale's claim insofar as he contends that the amount of the departure indicates that the court failed to give sufficient weight to certain among the factors. *See Torres*, 251 F.3d at 151–52.

For the foregoing reasons, the sentence will be affirmed.

---

1. We also reject the government's contention that we lack jurisdiction to hear this appeal because "all of Natale's meritless claims boil down to little more than a challenge to the extent of the Court's downward departure." Although we lack jurisdiction to review the District Court's discretionary determination that 17 levels was the appropriate departure, *see United States v. Torres*, 251 F.3d 138, 151–52 (3d Cir.2001), we do have jurisdiction over Natale's claims that the sentence was imposed in violation of law because the District Court failed to consider the relevant sentencing factors, *see United States v. Cooper*, 437 F.3d 324, 327–29 (3d Cir.2006); 18 U.S.C. §§ 3742(a)(1), (e).