# United States Court of Appeals
## For the First Circuit

No. 11-1267

UNITED STATES OF AMERICA,

Appellee,

v.

DANIEL ALMEIDA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Stahl, Circuit Judges.

Barbara J. Sweeney for appellant.
Robert E. Richardson, Assistant United States Attorney, with
whom Carmen Ortiz, United States Attorney, was on brief, for
appellee.

March 11, 2013

**STAHL**, **Circuit Judge**.  Daniel Almeida was indicted and tried for bank burglary under 18 U.S.C. § 2113(a).  The jury found him guilty.  On the basis of the evidence adduced at trial, the district court applied a sentencing guideline intended for cases of robbery, rather than the burglary guideline Almeida proposed.  The resulting sentence was roughly twice what it would have been under the burglary guideline.  Almeida now appeals that sentence, arguing that it was unconstitutional for the district court to sentence him under a guideline intended for robbery, given the government's failure to charge, try, and convict him under that theory of his crime.  Without reaching Almeida's constitutional claim, we remand for resentencing because, under application note 1 to U.S.S.G. § 1B1.2 and the introduction to the guidelines' Statutory Appendix, where the guidelines specify more than one offense guideline for a particular statutory offense and no plea agreement stipulates to a more serious offense, the district court must select the most appropriate guideline based only on conduct charged in the indictment.

## I.  Facts & Background

On May 26, 2007, $308,505 in cash was stolen from the East Cambridge Savings Bank on Highland Avenue in Somerville, Massachusetts.  The record reveals two rather different stories about how this happened.  In one telling, Almeida forced the bank's head teller, Jennifer McNamara (then Jennifer DaSilva), to open the

bank vault at gunpoint, and then tied her to a chair and absconded in her car with the money. In the other version of events, the heist was an inside job: McNamara was only pretending to be coerced, and actually planned the theft with Almeida and Jean Thermitus, a fellow bank employee with whom she was having an affair.

On July 9, 2008, a federal grand jury returned an indictment charging Almeida with "enter[ing] and attempt[ing] to enter a bank, to wit, the East Cambridge Savings Bank . . . with intent to commit in such bank a felony affecting such bank in violation of a statu[t]e of the United States and a larceny" in violation of 18 U.S.C. § 2113(a). At Almeida's subsequent trial, the jury heard testimony supporting both accounts of the heist. McNamara testified that, two days before the theft, her husband kicked her out; the next day, she went to stay with Thermitus. The night before the theft, she stopped at a liquor store to make some purchases; when she got back in the car, a man got in the back seat and put what felt like a gun to her head. He told her that an accomplice had her children and made her surrender her purse and cell phone. He initially wanted McNamara to take him directly to the bank, but, upon hearing that she could not access the vault until morning, made her spend the night in the car. In the morning, they drove to the bank, where she disarmed the alarm and let him in. He had her put tape over the lens of a security camera

-3-

and put cash from the vault into two large bags. He then taped her to a chair and left.

Amine Maach, a friend of Almeida's, testified that Almeida had admitted his involvement in the theft to Maach a few weeks after it happened. According to Maach, however, Almeida said that "Jean" (Thermitus) and "the lady, the bank teller" (McNamara, apparently) had planned the heist; the teller was only "act[ing] like" she had been kidnapped. Almeida told Maach that he met the teller the night before the theft, drove around until morning, and then entered the bank with her, tied her up, and took the money.

The jury also heard testimony that Almeida's involvement, whether as kidnapper or coconspirator, was supported by telephone records and DNA evidence taken from the crime scene and McNamara's car (which was recovered near Almeida's house). In its closing argument, the government relied on this evidence and McNamara's testimony to argue that Almeida "entered th[e] bank on the morning of May 26, 2007 . . . with at least the intent to commit a larceny in the bank." The government also argued at length that McNamara was credible and that her version of events was accurate. Nevertheless, the government said:

> [Almeida] claimed it was an inside job. I suggest to you it wasn't as far as [McNamara] was concerned. . . . I suggest to you [the evidence] doesn't show she was [involved]. But even if she was, it doesn't matter. Whether she actually was in fear of her own life and her kids' lives or whether she was somehow a part of this, it doesn't change the

-4-

> evidence against this defendant. <u>It doesn't change the evidence showing beyond any reasonable doubt that he entered the bank that day and that he did so with the intent to commit a larceny. And whether she's part of it or not part of it, the evidence still shows beyond any reasonable doubt that that is the case</u>.

The government's argument was consistent with the language of the indictment (described above). The jury found Almeida guilty.

In preparation for sentencing, the Probation Officer prepared a presentence report (PSR) that identified the applicable sentencing guideline as U.S.S.G. § 2B3.1, the "robbery" guideline, with a base offense level of twenty. <u>See</u> <u>id.</u> § 2B3.1(a). Pursuant to that guideline, the PSR recommended enhancements for taking the property of a financial institution (two levels), brandishing a weapon (three levels), abducting a person to facilitate the offense (four levels), and taking more than $250,000 but less than $800,000 (three levels). Both the choice of the robbery guideline and the application of the brandishing and abduction enhancements were clearly based on McNamara's version of events. Almeida and the government submitted sentencing memoranda; Almeida's objected to the base offense level and enhancements recommended in the PSR.

At sentencing, Almeida explained the basis for his objections, arguing that the government could have chosen to indict and try him for robbery, but did not; it chose to proceed under a burglary theory (which required only entry into the bank and not violence or intimidation), making the imposition of a longer

-5-

sentence for robbery inappropriate. Thus, Almeida contended that the burglary guideline, U.S.S.G. § 2B2.1, along with its different (and lesser) enhancements, should apply. The government responded that the court was allowed to apply the guideline "that most closely captures the defendant's conduct," and argued in the alternative that the court should vary the sentence upward from the burglary guideline range anyway. After considering these arguments, the district court concluded that the appropriate guideline was § 2B3.1, the robbery guideline, "because, based upon the evidence as the Court heard it" -- namely, McNamara's testimony, which the court found credible -- "at least . . . a preponderance of the evidence . . . [showed that] there was a robbery involved here." Accordingly, the court applied the robbery guideline and the four recommended enhancements, resulting in a total offense level of thirty-two; with criminal history, the guideline range was 151 to 188 months. The court, acknowledging that Almeida's sentence under the burglary guideline "would be about half of" the sentence under the robbery guideline, sentenced him to 151 months' imprisonment and three years' supervised release. This appeal followed.

## II. Analysis

We review the district court's choice of guidelines in this case de novo, and its attendant factual determinations for

-6-

clear error.  <u>United States</u> v. <u>Rodríguez-Adorno</u>, 695 F.3d 32, 43 (1st Cir. 2012).[1]

The issue presented by Almeida's appeal -- whether, after being convicted of violating 18 U.S.C. § 2113(a) in the manner alleged in the indictment, he could be sentenced under the robbery guideline (U.S.S.G. § 2B3.1) instead of the burglary guideline (U.S.S.G. § 2B2.1) -- arises from the interaction of two facts: that subsection 2113(a) can be violated in two markedly different ways, and that multiple sentencing guidelines can apply to convictions under that provision.  To illustrate the impact of this interaction on Almeida's sentence, we lay out the relevant language in the statute and the guidelines.

Subsection 2113(a) provides:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank . . . ; or

Whoever enters or attempts to enter any bank, . . . , or any building used in whole or in part as a bank . . . , with intent to commit in such bank . . . , or part thereof, so used, any felony affecting such bank, . . . and in violation of any statute of the United States, or any larceny--

---

[1]    The district court pointed out at sentencing that Almeida had not filed formal objections to the PSR, but it treated his sentencing memoranda as objections thereto.

Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a). As its text makes clear, subsection 2113(a) can be violated in two distinct ways: (1) bank robbery, which involves taking or attempting to take from a bank by force, intimidation, or extortion; and (2) bank burglary, which simply involves entry or attempted entry into a bank with the intent to commit a crime therein. (In either case, the bank must have been federally insured, United States v. Judkins, 267 F.3d 22, 23 (1st Cir. 2001), which was undisputedly true here.)

Presumably because subsection 2113(a) covers a variety of conduct, the sentencing guidelines' Statutory Appendix lists four guidelines sections as potentially applicable to a violation thereof, two of which are the burglary (§ 2B2.1) and robbery (§ 2B3.1) guidelines discussed above.[2] See U.S.S.G. App'x A. In this situation, the guidelines instruct the sentencing court to "determine which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted." Id. § 1B1.2 cmt. n.1; accord id. App'x A, intro.

_____

    [2] The other two listed guidelines, which neither party suggests should apply here, are U.S.S.G. § 2B1.1, which reaches "Larceny, Embezzlement, and Other Forms of Theft," and U.S.S.G. § 2B3.2, which covers "Extortion by Force or Threat of Injury or Serious Damage." Id. App'x A.

-8-

The gist of this structure is that a violation of subsection 2113(a) can be accomplished in two ways and punished in four ways (only two of which, burglary and robbery, are relevant here). In this case, the district court chose the robbery guideline instead of the burglary guideline because it credited McNamara's trial testimony, which described conduct that amounted to bank robbery, i.e., taking from a bank by force, violence, or intimidation. The indictment, however, did not allege the use of force, violence, or intimidation. Instead, the language of the indictment's sole count closely tracked that of subsection 2113(a)'s bank burglary prong, alleging that Almeida "did enter and attempt to enter a bank, to wit, the East Cambridge Savings Bank . . . with intent to commit in such bank a felony affecting such bank in violation of a statute of the United States and a larceny." Thus, as the government acknowledged at trial, the jury could have convicted Almeida of violating subsection 2113(a) in the manner charged in the indictment, i.e., bank burglary, even if it disbelieved McNamara's testimony that she was held at gunpoint. According to Almeida, this outcome violates the constitutional principle that "every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." Blakely v. Washington, 542 U.S. 296, 313 (2004) (emphasis omitted).

-9-

We need not reach Almeida's constitutional argument. Instead, we hold that application note 1 to U.S.S.G. § 1B1.2 and the introduction to the guidelines' Statutory Appendix required the district court in this case to select the applicable guideline based only on conduct charged in the indictment. As noted above, application note 1 provides for cases where, as here, the Statutory Index lists more than one guideline for a given offense, and the defendant has not stipulated in a plea agreement to an offense more serious than the offense of conviction. It reads:

> In the case of a particular statute that proscribes a variety of conduct that might constitute the subject of different offense guidelines, the Statutory Index may specify more than one offense guideline for that particular statute, and <u>the court will determine which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted</u>.

<u>Id.</u> § 1B1.2 cmt. n.1 (emphasis added).[3] The introduction to the Statutory Appendix contains the same instruction: "If more than one guideline section is referenced for the particular statute, use the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted." <u>Id.</u> App'x A, intro.

---

[3] "The Sentencing Commission's commentary, including the application notes, is binding on the courts as long as it does not conflict either with the sentencing guidelines themselves or with some statutory provision." <u>United States</u> v. <u>Carrasco-Mateo</u>, 389 F.3d 239, 244 (1st Cir. 2004); <u>see</u> <u>also</u> <u>United States</u> v. <u>Paneto</u>, 661 F.3d 709, 717 (1st Cir. 2011). We interpret guidelines commentary "using conventional methods of statutory construction." <u>United States</u> v. <u>Damon</u>, 595 F.3d 395, 400 n.3 (1st Cir. 2010).

The natural reading of these provisions is that, when selecting the "most appropriate" guideline, the sentencing court should look to the conduct alleged in the indictment, and not to uncharged conduct described in trial testimony.  Cf. United States v. Bah, 439 F.3d 423, 427 (8th Cir. 2006) (holding that a "plain reading" of the phrase "the conduct set forth in the count of conviction" as used in U.S.S.G. § 2B1.1(c)(3) requires the sentencing court to look only to the conduct alleged in the indictment).  Indeed, § 1B1.2 itself uses the same phrase in this manner, calling for the sentencing court to determine the guideline "applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)."  U.S.S.G. § 1B1.2(a).

In fact, the principal case on which the government relies illustrates that the language of the indictment is the proper basis for the most-appropriate-guideline determination.  In United States v. Sutton, 401 F. App'x 845 (4th Cir. 2010) (per curiam), the defendants were, like Almeida, convicted of violating subsection 2113(a) (although, unlike Almeida, they pled guilty).  One of the defendants argued, as Almeida does here, that the district court erred in applying U.S.S.G. § 2B3.1 (robbery) rather than U.S.S.G. § 2B2.1 (burglary).  Id. at 847.  The Fourth Circuit explained that, in selecting the appropriate guideline, "the court 'should compare the [g]uideline texts with the charged misconduct,

rather than the statute (which may outlaw a variety of conduct implicating several [g]uidelines) or the actual conduct (which may include factors not elements of the indicted offense).'"  Id. (quoting United States v. Lambert, 994 F.2d 1088, 1092 (4th Cir. 1993)).  Accordingly, the Sutton court went on to identify the applicable guideline by examining the language of the indictment. See id. at 847-48; see also United States v. Lewis, 161 F. App'x 322, 324 (4th Cir. 2006) (per curiam) (where the Statutory Index identified more than one applicable guideline, the court conducted "a comparison of the charged misconduct as described on the face of the indictment with the guidelines," and rejected arguments based on conduct not described in the indictment (emphasis added)); United States v. Johnson, 68 F. App'x 402, 405 (4th Cir. 2003) (per curiam) (similar).[4]

Consequently, we think it clear that the district court erred by selecting the guideline applicable to Almeida's crime on the basis of conduct not alleged in the indictment.  This conclusion is bolstered by the fact that courts have consistently read similar guidelines provisions to require that, "to the extent

_____

[4]  Not every case to apply the most-appropriate-guideline language has limited the inquiry to the conduct described in the indictment, but those cases that have also looked to trial evidence have not explained why doing so is authorized by the guidelines. See United States v. Belfast, 611 F.3d 783, 825 (11th Cir. 2010) (focusing on the conduct alleged in the indictment but also discussing trial evidence); United States v. Valladares, 544 F.3d 1257, 1266 (11th Cir. 2008) (considering trial evidence).

-12-

the court is required to look to the facts to select a guideline, the court is limited to the conduct charged in the indictment." United States v. McEnry, 659 F.3d 893, 899 (9th Cir. 2011) (applying U.S.S.G. § 2X5.1's "most analogous guideline" language); see also, e.g., United States v. Takahashi, 205 F.3d 1161, 1166 (9th Cir. 2000) (interpreting the "most applicable" guideline language in the pre-2000 version of § 1B1.2); United States v. Jackson, 117 F.3d 533, 538 (11th Cir. 1997) (construing the Statutory Index's now-defunct "atypical case" language). These examples reflect the principle that, absent a stipulation or cross-reference, "a sentencing court must, as required by [U.S.S.G. § 1B1.2](a), consider only 'the offense conduct charged in the count of the indictment or information of which the defendant was convicted' when making the choice-of-guideline determination." Thomas W. Hutchison, et al., Federal Sentencing Law & Practice, § 1B1.2, cmt. (3)(a) (2013 ed.) (emphasis added) (quoting U.S.S.G. § 1B1.2(a)). To hold otherwise "would effectively undercut the real offense/charge offense compromise struck by the Commission." Id.[5]

---

[5] As this discussion should make clear, we do not take issue with the government's assertion that, when selecting the "most appropriate" guideline, the sentencing court may "look beyond the name of the charged offense"; that much is certainly true. We part ways with the government only insofar as it contends that the court may consider "underlying" conduct not alleged in the count of the indictment of which the defendant was convicted.

Because the parties have not briefed the question of which guideline applies under the proper standard, we believe the most prudent course is to remand to the district court to consider that question in the first instance. In doing so, the district court should compare the guidelines listed in the Statutory Index as potentially applicable to subsection 2113(a) with "the charged misconduct as described on the face of the indictment." Lewis, 161 F. App'x at 324. Where "[n]either the text of the [guideline] section nor its accompanying commentary offers further information as to the types of conduct covered by the section," the district court may "presume that [the] common understanding of the[ specified] crimes applies." United States v. Dion, 32 F.3d 1147, 1149 (7th Cir. 1994) (finding that the defendant's "conduct fit[] a common definition of embezzlement"); cf. Hutchison, et al., supra, § 2B2.1, cmt. 5 (discussing "the common-law definition of burglary" and "the generic, contemporary meaning of burglary" in determining what conduct lies within the heartland of § 2B2.1 (internal quotation marks omitted)).

In closing, we note that our reasoning is limited to the question of what conduct a court may consider in determining the "most appropriate" guideline pursuant to application note 1 to § 1B1.2 (or the identical language in the Statutory Appendix's introduction). As noted above, we do not consider Almeida's constitutional argument. We also do not consider whether the

district court could have departed upward to reach the same result even if the robbery guideline did not apply; although the government said so below, it has not pressed the point on appeal. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

### III.  Conclusion

For the foregoing reasons, we vacate Almeida's sentence and remand this case to the district court for resentencing.