# United States Court of Appeals
## For the First Circuit

No. 12-2004

UNITED STATES OF AMERICA,

Appellee,

v.

REGINALD S. GRACIE, JR.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock Jr., U.S. District Judge]

Before

Torruella, Dyk[*] and Kayatta,
Circuit Judges.

Paul J. Garrity, on brief for appellant.
Renée M. Bunker, Assistant United States Attorney, and Thomas
E. Delahanty II, United States Attorney, on brief for appellee.

September 23, 2013

[*]Of the Federal Circuit, sitting by designation.

**KAYATTA, Circuit Judge**.  Reginald Gracie appeals his sentence, arguing that the district court should have sentenced him for accepting an illegal gratuity rather than for demanding a bribe.  We affirm.

## I. Background

Reginald Gracie, Jr., was a pharmacist.  In 2005, he became Director of Operations[1] for the short-lived PIN Rx, a mail-order pharmacy that was wholly owned and operated by the Penobscot Indian Nation and which did a substantial amount of questionable business filling prescriptions for online pharmacies. When PIN Rx's Pharmacist in Charge resigned from that role over concerns that these transactions threatened her license,  Gracie took over that position.  Thereafter,  Gracie admits that he began accepting payments "from Internet pharmacy sites" for whose customers PIN Rx filled orders.

Gracie was eventually indicted on charges relating to these payments.  On February 17, 2012, Gracie pled guilty to three counts: two tax-related counts not at issue here, and Count 22, which charged him with "soliciting and accepting kickbacks [in violation of] 18 U.S.C. § 666(a)(1)(B)."  Specifically, Count 22 alleged that Gracie "corruptly solicit[ed], demand[ed], accept[ed] and agree[d] to accept a thing of value, namely [$8,760] deposited

---

[1]In the district court, Gracie's counsel referred to him as the CEO of PIN Rx.  The distinction has no bearing on our analysis.

-2-

into his personal bank account . . . from representatives of ["Company F"] . . . intending to be influenced and rewarded in connection with the filling of drug orders by PIN RX for the customers of ["Company F"], which transactions . . . were valued at $5,000 or more."

At sentencing, the parties disputed which guideline the district court should use to determine Gracie's base offense level. The dispute arose because the guidelines implicitly presume that section 666(a)(1)(B) criminalizes both the receipt of bribes and the receipt of gratuities. The Guidelines' index manifests this presumption by directing a court sentencing for a violation of section 666(a)(1)(B) to two different guidelines: section 2C1.1 ("Offering, Giving, Soliciting, or Receiving a Bribe . . . .") and section 2C1.2 ("Offering, Giving, Soliciting, or Receiving a Gratuity"). U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§ 2C1.1; 2C1.2. The U.S. Sentencing Guidelines Manual provides that when several guidelines are listed in the index for a given statute or subsection, the sentencing court must "determine which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted." U.S.S.G. § 1B1.2, cmt.n.1.

By selecting section 2C1.1, for bribery, as the most appropriate guideline, the district court calculated a base offense level three points higher than would have been the case had the

court selected section 2C1.2 as the most appropriate guideline. Compare U.S.S.G. § 2C1.1(a), with id. § 2C1.2(a). Employing that base offense level, the district court sentenced Gracie to forty-six months imprisonment on Count 22. Having preserved his right to appeal any sentence in excess of eighteen months of imprisonment, Gracie appealed. He contends that the district court erred in selecting the bribery guideline. For the following reasons, we disagree.

## II. Standard of Review

Although we had previously treated a district court's choice of guideline as predominantly a question of fact to be reviewed for clear error, United States v. Mariano, 983 F.2d 1150, 1158 (1st Cir. 1993), we recently clarified that "[w]e review the district court's choice of guidelines . . . de novo, and its attendant factual determinations for clear error." United States v. Almeida,710 F.3d 437, 439 (1st Cir. 2013); accord United States v. Ihenacho, 716 F.3d 266, 276 (1st Cir. 2013).

## III. Analysis

**A.    Gracie pled to soliciting and receiving a bribe, not a gratuity.**

When the district court sentenced Gracie, it was possible to construe 18 U.S.C. § 666(a)(1)(B) as making it unlawful to

solicit or to accept either bribes or gratuities.[2]  See United

States v. Ganim, 510 F.3d 134, 150 (2d Cir. 2007) (describing

section 666(a)(1)(B) as prohibiting the acceptance of both bribes

and gratuities); United States v. Zimmermann, 509 F.3d 920, 927

(8th Cir. 2007) (same); cf. Mariano, 983 F.2d at 1158 (noting that

section 666(a)(2) "seem[ed] to virtually mirror" the language of 18

U.S.C. § 201(b)(1), which prohibits bribing federal officials).  A

decision subsequent to Gracie's sentencing and appeal, discussed

infra, has clarified that section 666(a)(1)(B) does not apply to

gratuities.  See United States v. Fernandez, 722 F.3d 1 (1st Cir.

2013).  In evaluating Gracie's claims, however, we first consider

whether his actions, at the time of sentencing, could reasonably be

interpreted as accepting either a gratuity or a bribe.

The essential distinction between a bribe and a gratuity

is that a bribe requires a quid pro quo, the exchange of something

of value for influence over some official conduct of the recipient.

See Mariano, 983 F.2d at 1158.  The indicted offense to which

---

[2]  Section 666(a) provides in pertinent part:
Whoever . . . being an agent of an organization, or . . .
Indian tribal government, or any agency thereof [which
receives more than $10,000 in a year in federal benefits]
. . . corruptly solicits or demands for the benefit of
any person, or accepts or agrees to accept, anything of
value from any person, intending to be influenced or
rewarded in connection with any business, transaction, or
series of transactions of such organization, government,
or agency involving any thing of value of $5,000 or more
. . . shall be fined under this title, imprisoned not
more than 10 years, or both.

Gracie pled guilty plainly charged a quid pro quo. Gracie was indicted for "corruptly solicit[ing], demand[ing], accept[ing] and agree[ing] to accept [payments totaling $8,760] intending to be influenced in connection with the filling of drug orders . . . ." When a person with the power to do or not do something demands a payment from the beneficiary of the exercise of that power as a condition for continuing to do so, the payment is not gratuitous. Cf. United States v. Alfisi, 308 F.3d 144, 151 (2d Cir. 2002)(noting, in a case under 18 U.S.C. § 201, that even if payments were to assure that an inspector carried out his duties accurately, they were nonetheless bribes).

The circumlocutious manner in which Gracie recharacterizes his conduct reinforces the conclusion that the indictment charges the solicitation and receipt of bribes. Gracie argues that he took payments "as a reward for staying in his position" and "continuing to risk his license in a questionable business." This description is revealing for its omission of the actual charge that Gracie "demand[ed] and accept[ed]" the payment. We infer from such strained avoidance that Gracie recognizes his argument as an equally strained interpretation of the facts. It is also revealing for its concession that he demanded and took the funds not for a past event, but for "continuing" to do what the payee desired (stay on the job and risk his license by filling online drug orders). If a bus driver demands a tip from his

-6-

passengers for "continuing" to drive the bus, the resulting payments are hardly gratuitous. So, too, if Gracie demanded payments from an online prescription drug seller for, as he argues, "continuing" to perform his job of filling drug orders, the resulting payments were the seller's "this" exchanged for Gracie's "that."

Taking a slightly different tack, Gracie strings together the following argument: the background notes to sections 2C1.1 and 2C1.2 discuss only those bribe and gratuity recipients who are "public officials;"[3] Gracie is not a public official; guidelines section 2E5.1 distinguishes bribes from gratuities (in the context of employee welfare benefit plans and labor unions) without reference to public officials, defining bribes as payments for

---

[3] Section 2C1.1's background note provides in part: [t]his section applies to a person who offers or gives a bribe for a corrupt purpose, such as inducing a public official to participate in a fraud or to influence such individual's official actions, or to a public official who solicits or accepts such a bribe. The object and nature of a bribe may vary widely from case to case . . . . Consequently, a guideline for the offense must be designed to cover diverse situations. U.S.S.G. § 2C1.1 cmt. background. Section 2C1.2's note states: "This section applies to the offering, giving, soliciting, or receiving of a gratuity to a public official in respect to an official act." U.S.S.G. § 2C1.2 cmt. background.

official action, and gratuities as everything else;[4] Gracie's decision to continue working was not an official action, so under section 2E5.1, the payment would be a gratuity; therefore the court should have applied section 2C1.2.

Gracie does not argue that the district court should have actually sentenced him under section 2E5.1.[5] Nor does he claim that because his scheme involved no public officials, both sections 2C1.1 and 2C1.2 (which appear under the heading "Offenses involving Public Officials and Violations of Federal Election Campaign Laws") were inapposite.[6] (In any event, the Guidelines themselves are specific. They cover both (1) situations where "the defendant was a public official" and (2) "otherwise." See U.S.S.G. §§ 2C1.1(a), 2C1.2(a).) And there is no dispute that Gracie was not sentenced as a public official. See U.S.S.G. §§ 2C1.1(a)(1), 2C1.2(a)(1). Rather, his argument boils down to the claim that because the background notes to sections 2C1.1 and 2C1.2 don't fully capture his conduct, the district court should have imported definitions of

_____

[4]   The commentary to section 2E5.1 defines a bribe as "the offer or acceptance of an unlawful payment with the specific understanding that it will corruptly affect an official action of the recipient," and a gratuity as "the offer or acceptance of an unlawful payment other than a bribe." U.S.S.G. § 2E5.1 cmt. n.1, 2.

[5]   Section 2E5.1 focuses on giving or taking "bribes and other unlawful gratuities involving employee welfare or pension benefit plans, or labor organizations." U.S.S.G. § 2E5.1 cmt. background.

[6]   If Gracie meant to raise such an argument, he did so far too obliquely, and far too late. Cf. Mariano, 983 F.2d at 1158 n.9.

-8-

bribe and gratuity from a different guidelines section to select the most appropriate guideline for his charge.

We have previously cautioned against mixing and matching guidelines for different crimes, as each set of guidelines tends to function as a unit with its own "tradeoffs and specifications." United States v. Brennick, 134 F.3d 10, 15 (1st Cir. 1998); see also U.S.S.G. § 1B1.1, cmt. n.2. There was no need for the district court to do so here. Although sections 2C1.1 and 2C1.2 do not define "bribe" and "gratuity" as explicitly as section 2E5.1 does, the distinction has been well defined in the case law. See Mariano, 983 F.2d at 1159 (discussing section 666(a)(2)); see also United States v. Sun-Diamond Growers of Cal., 526 U.S. 398, 404-05 (1999)(construing 18 U.S.C. § 201). There was no need to look to section 2E5.1, which applies to significantly different statutes, to discern the difference.

Even if we followed Gracie's lead, however, he is again defeated by the indictment. Gracie was charged with taking money while "acting as the pharmacist-in-charge and director of operations of PIN Rx," "intending to be influenced and rewarded in connection with the filling of drug orders by PIN RX . . . ." The indictment explained that "the Pharmacist in Charge is responsible legally and professionally for all activities related to the practice of pharmacy within the retail drug outlet." Therefore, Gracie was charged with accepting money to be influenced in and

-9-

rewarded for his "official acts" as section 2E5.1 uses that term. Cf., e.g., United States v. Lopreato, 83 F.3d 571, 575 (2d Cir. 1996)(pension fund trustee and co-chairman took bribes under section 2E5.1 for agreeing and voting to invest the fund's money in particular securities).

To be sure, the background commentary to sections 2C1.1 and 2C1.2 does not explicitly describe an individual who accepts payments but is not a public official. However, each guideline is written to cover multiple offenses. Cf. U.S.S.G. Ch. 1, Pt. A Subpt. 1(4)(a)(noting that the guidelines resemble a "real offense" system in part because "the hundreds of overlapping and duplicative statutory provisions that make up the federal criminal law forced the Commission to write guidelines that are descriptive of generic conduct rather than guidelines that track purely statutory language.") Section 666 is not the core statute for which sections 2C1.1 and 2C1.2 were written. See U.S.S.G. § 2C1.1 cmt. (stat. provisions); U.S.S.G. § 2C1.2 cmt. (stat. provisions). Nonetheless, the Sentencing Commission made clear in the Statutory Index that it viewed sections 2C1.1 and 2C1.2 as the most appropriate options for section 666(a)(1)(B), even though the statute clearly covers more than public officials. Courts need only select the "most appropriate" of the available guidelines. U.S.S.G. § 1B1.2 cmt. n.1. As Gracie neither argues on appeal that sections 2C1.1 and 2C1.2 were both inapposite nor tries to resuscitate his request for

-10-

an "outside the heartland" departure or variance,[7] nothing more is required here to conclude that the district court chose correctly.

### B.    Recent changes in our case law provide Gracie with no assistance on this appeal.

In reaching our conclusion, we have also considered two recent decisions not addressed by Gracie:  United States v. Almeida, 710 F.3d 437 (1st Cir. 2013), and United States v. Fernandez, 722 F.3d 1 (1st Cir. 2013).  We have done so because both cases were decided after Gracie filed his brief (although we note that the government cited Almeida, and Gracie could have addressed it had he filed a reply).  In any event, however, neither case helps Gracie.

Almeida clarified that in determining which guideline to apply at sentencing, sentencing courts should look only at the conduct as charged in the indictment, not at, for example, uncharged conduct later proved at trial.  710 F.3d 437, 441–42 (1st Cir. 2013).[8]  Almeida therefore means that the district court

---

[7]  U.S.S.G. Ch. 1 Pt. A (4) explains that:
[t]he Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

[8]  This rule does not apply where a defendant stipulates in a plea agreement to an offense more serious than that charged in the count of conviction, Almeida, 710 F.3d at 441, but the government has not tried to invoke that exception.

should not have looked, as it did, at the version of events brought forth at Gracie's change of plea hearing in choosing the bribery guideline. But it would equally have erred had it relied on Gracie's strained recharacterization of what transpired. The conduct charged in the indictment was clearly the solicitation and acceptance of bribes. Under Almeida, the bribery guideline is therefore still the correct choice.

In United States v. Fernandez, 722 F.3d 1, 25 (1st Cir. 2013), we held that section 666(a)(1)(B) does not criminalize gratuities. That holding actually adds more weight to the holding that we reach here today; under Fernandez, it is clear that Gracie could not have been convicted under section 666(a)(1)(B) if he only accepted gratuities. We nevertheless need not rely on Fernandez, because, as explained above, however one reads the statute, the indictment itself alleged only acts of bribery.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.